| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | Holiday Ham Holdings, LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: Middle District of Tennessee | |
| Case number | 23-23313 |

## Official Form 410

# Proof of Claim

12/15

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense.** Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Pinnacle Bank
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Smythe Huff & Murphy, PC
Name

1222 16th Avenue South, Suite 301
Number     Street

Nashville          TN          37212
City               State       ZIP Code

Contact phone  (615) 255-4849

Contact email  _____

**Where should payments to the creditor be sent? (if different)**

Pinnacle Bank
Name

5925 Farrington Rd.
Number     Street

Chapel Hill        NC          27517
City               State       ZIP Code

Contact phone  (919) 433-9490

Contact email  Bill.Kerns@pnfp.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __2__ __7__ __1__ __0__

---

**7. How much is the claim?**   $_____665,474.03__. Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

__SBA Commercial Note Dated December 5, 2012__

---

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☑ Other. Describe:   __All Business Assets**__

**\*\*Unconditional Guarantees of Seth & Robin Ritter; Collateral Assignment of Lease at 1012 Russell Street, Suite 202, Nashville, TN and Junior Deed of Trust of Guarantors' real property at 6541 Chessington Drive, Nashville, TN**

**Basis for perfection:**   __UCC-1__

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                           $_____ (Unknown)

Amount of the claim that is secured:        $_____

Amount of the claim that is unsecured:  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $_____12,968.52

Annual Interest Rate (when case was filed) __11.00__ %

☐ Fixed

☑ Variable

---

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____12,968.52

---

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

---

Official Form 410                                    **Proof of Claim**                                    page 2

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check all that apply:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

| The person completing this proof of claim must sign and date it. FRBP 9011(b). | Check the appropriate box: |
|---|---|
| If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is. | ☐  I am the creditor. |
| | ☑  I am the creditor's attorney or authorized agent. |
| | ☐  I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. |
| | ☐  I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. |
| **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.** **18 U.S.C. §§ 152, 157, and 3571.** | I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt. |
| | I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct. |
| | I declare under penalty of perjury that the foregoing is true and correct. |

Executed on date   07/17/2023
                   MM / DD / YYYY

/s/ Matthew R. Murphy
  Signature

Print the name of the person who is completing and signing this claim:

| Name | Matthew R. Murphy | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney for Pinnacle Bank | | |
| Company | Smythe Huff & Murphy, PC, Attorneys for Pinnacle Bank | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1222 16th Avenue South, Suite 301 | | |
| | Number        Street | | |
| | Nashville | TN | 37212 |
| | City | State | ZIP Code |
| Contact phone | (615) 255-4849 | Email | mmurphy@smythehuff.com |



**U.S. Small Business Administration**

NOTE

We certify this document to be a true and correct copy of the original Note.

Signature _Judy Z Carter_  Date _12/10/12_

| SBA Loan # | 50-03 |
|---|---|
| SBA Loan Name | Jordan Enterprises, LLC |
| Date | December 5, 2012 |
| Loan Amount | $1,850,000.00 |
| Interest Rate | Prime plus 2.75%, initially 6.00% per year |
| Borrower | Jordan Enterprises, LLC; Holiday Erin, LLC; Holiday Midtown, LLC; Holiday Germantown, LLC;  and Hacks Holiday, LLC |
| Operating Company | |
| Lender | Magna Bank |

1.    PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of One Million Eight Hundred Fifty Thousand ($1,850,000.00) _____ Dollars, interest on the unpaid principal balance, and all other amounts required by this Note.

2.    DEFINITIONS:

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

THE GUARANTEED PORTION OF THE OUTSTANDING PRINCIPAL BALANCE OF THIS NOTE HAS BEEN TRANSFERRED TO A REGISTERED HOLDER FOR VALUE.

MAGNA BANK

BY: _____
Edward L. Simpson, Executive Vice President

SBA Form 147 (06/03/02) Version 4.1



U.S. Small Business Administration

# NOTE

| | |
|---|---|
| SBA Loan # | ·50-03 |
| SBA Loan Name | Jordan Enterprises, LLC |
| Date | December 5, 2012 |
| Loan Amount | $1,850,000.00 |
| Interest Rate | Prime plus 2.75%, initially 6.00% per year |
| Borrower | Jordan Enterprises, LLC; Holiday Erin, LLC; Holiday Midtown, LLC; Holiday Germantown, LLC;  and Hacks Holiday, LLC |
| Operating Company | |
| Lender | Magna Bank |

1.   PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of
One Million Eight Hundred Fifty Thousand ($1,850,000.00) _____ Dollars,

interest on the unpaid principal balance, and all other amounts required by this Note.

2.   DEFINITIONS:

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who
pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

3.   PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

The interest rate on this Note will fluctuate. The initial interest rate is 6.00% per year. This initial rate is the Prime Rate in effect on the first business day of the month in which SBA received the loan application, plus 2.75%. The initial interest rate must remain in effect until the first change period begins unless reduced in accordance with SOP 50 10.

Borrower must pay one payment of interest only on the disbursed principal balance one month from the month this Note is dated; payment must be made on the first calendar day in the month it is due.

Borrower must pay principal and interest payments of $20,538.79 every month, beginning two months from the month this Note is dated; payments must be made on the first calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted monthly (the "change period").

The "Prime Rate" is the Prime Rate in effect on the first business day of the month (as published in the Wall Street Journal newspaper) in which SBA received the application, or any interest rate change occurs. Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.

The adjusted interest rate will be 2.75% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

The spread as identified in the Note may not be changed during the life of the Loan without the written agreement of the Borrower.

For variable rate loans, the interest rate adjustment period may not be changed without the written consent of the Borrower.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

Loan Prepayment:

Notwithstanding any provision in this Note to the contrary:

Borrower may prepay this Note. Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:

a. Give Lender written notice;
b. Pay all accrued interest; and
c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable 10 years and 1 month from date of Note.

Late Charge: If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment.

4.  DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A.  Fails to do anything required by this Note and other Loan Documents;
B.  Defaults on any other loan with Lender;
C.  Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;
D.  Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;
E.  Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;
F.  Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;
G.  Fails to pay any taxes when due;
H.  Becomes the subject of a proceeding under any bankruptcy or insolvency law;
I.  Has a receiver or liquidator appointed for any part of their business or property;
J.  Makes an assignment for the benefit of creditors;
K.  Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;
L.  Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or
M.  Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.


5.  LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A.  Require immediate payment of all amounts owing under this Note;
B.  Collect all amounts owing from any Borrower or Guarantor;
C.  File suit and obtain judgment;
D.  Take possession of any Collateral; or
E.  Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.


6.  LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A.  Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;
B.  Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;
C.  Release anyone obligated to pay this Note;
D.  Compromise, release, renew, extend or substitute any of the Collateral; and
E.  Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7.  WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8.  SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9.  GENERAL PROVISIONS:

A.  All individuals and entities signing this Note are jointly and severally liable.

B.  Borrower waives all suretyship defenses.

C.  Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D.  Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

E.  Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F.  If any part of this Note is unenforceable, all other parts remain in effect.

G.  To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

10.  STATE-SPECIFIC PROVISIONS:

11.   BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

Jordan Enterprises, LLC

*(signature)*

Lucius D. Jordan III
Chief Manager


Holiday Erin, LLC

*(signature)*

Lucius D. Jordan III
Chief Manager


Holiday Midtown, LLC

*(signature)*

Lucius D. Jordan III
Chief Manager


Holiday Germantown, LLC

*(signature)*

Lucius D. Jordan III
Chief Manager


Hacks Holiday, LLC

*(signature)*

Lucius D. Jordan III
Chief Manager

## LOAN AND SECURITY AGREEMENT

**THIS LOAN AND SECURITY AGREEMENT**, made and entered into this 5th day of December, 2012, by and between **MAGNA BANK**, a Tennessee state banking corporation, with its principal office at 6525 Quail Hollow Road, Suite 513, Memphis, Tennessee 38120 ("Lender"); **JORDAN ENTERPRISES, LLC,** a Tennessee limited liability company with its principal office at 700 Colonial Road, Suite 225, Memphis, Tennessee 38117 ("Jordan"); **HOLIDAY ERIN, LLC,** a Tennessee limited liability company with its principal office at 700 Colonial Road, Suite 225, Memphis, Tennessee 38117 ("Erin"); **HOLIDAY MIDTOWN, LLC,** a Tennessee limited liability company with its principal office at 700 Colonial Road, Suite 225, Memphis, Tennessee 38117 ("Midtown"); **HOLIDAY GERMANTOWN, LLC,** a Tennessee limited liability company with its principal office at 700 Colonial Road, Suite 225, Memphis, Tennessee 38117 ("Germantown"); and **HACKS HOLIDAY, LLC,** a Tennessee limited liability company with its principal office at 700 Colonial Road, Suite 225, Memphis, Tennessee 38117 ("Hacks") (collectively "Borrower"); and **LUCIUS D. JORDAN III** ("Guarantor");

## W I T N E S S E T H :

WHEREAS, Borrower has requested that Lender extend financial accommodations to it in order to provide funds to pay off existing debt and provide working capital; and

WHEREAS, Lender has agreed to extend financial accommodations for such purpose to Borrower in the form of a One Million Eight Hundred Fifty Thousand Dollar ($1,850,000.00) term loan to be made in accordance with, and subject to, the terms and conditions set forth below; and

NOW THEREFORE, in consideration of the terms and conditions contained herein, and of any loan or other financial accommodation heretofore, now or hereafter made by Lender to or on behalf of Borrower, the parties hereto hereby agree as follows:

## SECTION 1. DEFINITIONS.

1.1    Defined Terms. For purpose of this Agreement, in addition to the terms defined elsewhere in this Agreement, the following terms shall have the meanings set forth below:

"Account" shall mean any right to payment of a monetary obligation due, whether or not earned by performance. Without limiting the generality of the foregoing, the term "Account" shall further include any "account" (as that term is defined in the Uniform Commercial Code), any accounts receivable, any "Payment Intangible" (as that term is defined in the Uniform Commercial Code) and all other rights to payment of every kind and description, whether or not earned by performance.

"Account Debtor" shall mean any Person obligated on any Account.

"Affiliated" shall mean, with respect to a specified Person, any Person directly or indirectly controlling, controlled by, or under common control with the specified Person, including without limitation their stockholders and any Affiliates thereof. A Person shall be deemed to control a corporation or other entity if the Person possesses, directly or indirectly, the

1

power to direct or cause the direction of the management and business of the corporation or other entity, whether through the ownership of voting securities, by contract, or otherwise.

"Agreement" or "this Agreement" shall include all amendments, modifications and supplements hereto and shall refer to this Agreement as the same may be in effect at the time such reference becomes operative.

"Borrower" shall mean Jordan, Erin, Midtown, Germantown and Hacks.

"Chattel Paper" shall have the meaning given to it in the Uniform Commercial Code.

"Collateral" shall mean and include all of the property pledged to Lender as security for the Obligations and the Guarantees pursuant to this Agreement, including section 4.1, 4.2 and 4.5 hereof, which shall, from time to time, secure the Obligations.

"Equipment" shall mean all goods including without limitation, copy machines, all machinery, motor vehicles, parts, supplies, apparatus, appliances, tools, leasehold improvements, furniture, furnishings, fixtures and articles of tangible personal property of every description and shall include all goods included by the definition of "equipment" in the Uniform Commercial Code.

"Fixtures" shall have the meaning given to it in the Uniform Commercial Code.

"Generally Accepted Accounting Principles" (GAAP) shall mean generally accepted accounting principles consistently applied and maintained.

"General Intangibles" shall have the meaning given to it in the Uniform Commercial Code.

"Guarantee" shall mean the Unconditional Guarantee referred to in Section 4.2 hereof executed by Guarantor in favor of Lender, whereby Guarantor unconditionally guarantee the Obligations of Borrower to Lender.

"Guarantor" shall mean Lucius D. Jordan III.

"Indebtedness" shall mean all liabilities, obligations and indebtedness of any and every kind and nature, including, without limitation, the Obligations and all obligations to trade creditors, whether heretofore, now or hereafter owing, arising, due or payable from Borrower to any person and howsoever evidenced, created, incurred, acquired or owing, whether primary, secondary, direct, contingent, fixed or otherwise.

"Instruments" shall have the meaning given to it in the Uniform Commercial Code.

"Inventory" shall have the meaning given to it in the Uniform Commercial Code.

"Loan" shall mean and refer to the term loan referred to in Section 2.1 hereof.

"Loan Documents" shall mean and collectively refer to this Agreement, the Note, and any and all agreements, instruments and documents, including, without limitation, documents required by the SBA Authorization, guaranties, deeds to secure debt, chattel mortgages, pledges, powers of attorney, consents, assignments, contracts, notices, security agreements, trust account agreements, and all other written matters whether heretofore, now or hereafter executed by or in behalf of Borrower and/or delivered to Lender, with respect to this Agreement, or with respect to the transactions contemplated by this Agreement.

"Note" shall mean the Note (SBA Form 147) of Borrower executed and delivered to Lender pursuant to Section 2.1 hereof, together with any amendments, modifications and supplements thereto, and any renewals or extensions thereof, in whole or in part.

"Obligations" shall mean and include the Loan and all other loans, note, advances, debts, liabilities, obligations, covenants and duties owing, arising, due or payable from Borrower to Lender of any kind or nature, present or future, whether or not evidenced by any note, guaranty or other instrument, whether arising under this Agreement, the Note, the other Loan Documents or otherwise, whether direct or indirect (including those acquired by assignment), absolute or contingent, primary or secondary, due or to become due, now existing or thereafter arising and however acquired. The term includes, but without limitation, all interest, charges, expenses, fees, attorneys' and paralegals' fees and any other sums chargeable to Borrower by Lender under this Agreement or any of the other Loan Documents.

"Person" shall mean an individual, partnership, corporation, trust, joint venture, joint stock company, limited liability company, association, unincorporated organization, or any other entity.

"Prime Rate" shall mean the interest rate announced from time to time in *The Wall Street Journal*.

"SBA" shall mean the U.S. Small Business Administration.

"SBA Authorization" mean that Authorization issued by the U.S. Small Business Administration to Lender regarding the Loan, a copy of which has been provided to Borrower.

"Uniform Commercial Code" shall mean the Uniform Commercial Code as adopted in the State of Tennessee, as the same may be from time to time amended.

1.2    Other Terms. All other terms contained in this Agreement shall, when the context so indicates, have the meanings provided for by the Uniform Commercial Code of the State of Tennessee to the extent the same are used or defined therein or as are otherwise defined in this Agreement.

### SECTION 2. THE LOAN; INTEREST; PROCEEDS OF THE LOAN AND FEES.

2.1    Loan. Subject to all of the terms and conditions set forth in this Agreement and the other Loan Documents, Lender shall make a term loan to Borrower in the amount of One Million Eight Hundred Fifty Thousand Dollars ($1,850,000.00). The Loan shall be evidenced by the Note in the foregoing principal amount, with interest at two and three-quarters percent

(2.75%) above Prime Rate with such rate being adjusted monthly and beginning at six percent (6.00%) per annum. Borrower shall make payments in accordance with the terms of the Note. All remaining principal and interest shall be payable ten years and one month from the date of the Note.

2.2 <u>Loan Purposes for Loan</u>. Borrower shall use the proceeds of the Loan solely for the purposes described in the SBA Authorization.

## SECTION 3. PAYMENTS.

3.1 <u>Payments</u>. All Obligations of Borrower to Lender shall be repayable at Lender's address set forth above or at such other place or places as Lender may designate from time to time. That portion of the Obligations consisting of Principal and Interest on the Loan shall be payable upon (a) the dates specified in the Note, or (b) the termination of this Agreement by Lender pursuant to SECTION 11 hereof.

3.2 <u>Application of Payments and Collections</u>. Borrower irrevocably waives the right to direct the application of any and all payments and collections at any time or times hereafter received by Lender from or on behalf of Borrower, and Borrower does hereby irrevocably agree that from and after an Event of Default, Lender shall have the continuing exclusive right to apply and to reapply any and all such payments and collections received at any time or times hereafter by Lender or its agent against the Obligations, in such manner as Lender, in its sole discretion, may determine, notwithstanding any entry by Lender upon any of its books and records.

3.3 <u>Statement of Account</u>. Lender shall provide Borrower with a statement of account on a monthly basis or as requested and each statement of account which is delivered by Lender to Borrower and which relates to the Obligations shall be presumed correct and accurate, shall constitute an account stated between Borrower and Lender, and shall be deemed correct and conclusively binding upon Borrower, unless thereafter waived in writing by Lender or unless, within thirty (30) days after Borrower's receipt of such statement, Borrower delivers to Lender written objection thereto specifying the error or errors, if any, contained in any such statements.

3.4 <u>Voluntary Prepayments</u>. Except as specifically provided in the Note, Borrower shall have the right from time to time to voluntarily prepay without penalty or premium the whole or any part of the principal on the Loan.

## SECTION 4. SECURITY FOR THE OBLIGATIONS.

4.1 <u>Security Interest in the Collateral</u>. To secure the prompt payment and performance of all of the Obligations, Erin, Germantown and Hacks hereby pledge and assign to Lender and grant to Lender a first perfected security interest and a continuing general security interest in and to the following assets, property and interests in property of, whether now owned or existing or at any time hereafter acquired, arising or created, wherever located: Equipment, Inventory, Accounts, Instruments, Chattel Paper, and General Intangibles. The security interest herein granted shall give Lender a continuing lien in, on and to all of these goods, and the proceeds and products thereof and thereto, and any replacements, additions, accessions or substitutions thereof, including, without limitation, the proceeds of insurance covering the Collateral.

To secure the prompt payment and performance of all of the Obligations, Jordan and Midtown hereby pledge and assign to Lender and grant to Lender a second perfected security interest and a continuing general security interest in and to the following assets, property and interests in property of, whether now owned or existing or at any time hereafter acquired, arising or created, wherever located: Equipment, Inventory, Accounts, Instruments, Chattel Paper, and General Intangibles. The security interest herein granted shall give Lender a continuing lien in, on and to all of these goods, and the proceeds and products thereof and thereto, and any replacements, additions, accessions or substitutions thereof, including, without limitation, the proceeds of insurance covering the Collateral.

4.2     Guarantee.  Pursuant to the Guarantee, Guarantor shall unconditionally guarantee the payment and performance in full of the Obligations of Borrower to Lender.

4.3     Cross-Collateralization.  The Collateral and all other collateral which Lender may at any time acquire from any other source in connection with the Obligations of Borrower to Lender shall constitute cross-collateral for all Obligations of Borrower without apportionment or designation as to particular Obligations, and all Obligations, howsoever and whensoever incurred, shall be secured by all of the Collateral, howsoever and whensoever acquired, and Lender shall have the right, in its sole discretion, to determine the order in which Lender's rights in or remedies against the Collateral are to be exercised and which types of the Collateral or which portions of the Collateral are to be proceeded against and the order of application of proceeds of the Collateral as against particular Obligations of Borrower.

4.4     Inspection.  Lender (by any of its officers, employees and agents) shall have the right, at any time or times during Borrower's usual business hours, to inspect the Collateral, all records related thereto (and to make extracts from such records), and the premises upon which any of the Collateral is located, to discuss Borrower's affairs and finances with any person or entity and to verify the amount, quality, quantity, value and condition of, or any other matter relating to, the Collateral. The foregoing right shall include, but not be limited to, the right to conduct field examinations at the Borrower's expense. Lender may, at any time upon and after the occurrence of an Event of Default and during the continuance thereof, employ and maintain in Borrower's premises custodians selected by Lender who shall have full authority to do all acts necessary to protect Lender's interest. All expenses incurred by Lender by reason of the employment of such custodians shall be paid by Borrower, added to the Obligations and secured by the Collateral.

4.5     Life Insurance on Lucius D. Jordan III.  As additional security for the repayment of the Obligations, Borrower must carry a life insurance policy(s) on the life of Lucius D. Jordan III in the aggregate amount of at least One Million Eight Hundred Fifty Thousand Dollars ($1,850,000.00) with an insurer satisfactory to Lender.  This life insurance policy must be collaterally assigned to Lender and the corporate office of such insurer must acknowledge such assignment.

## SECTION 5. CONDITIONS OF LENDING.

5.1     Conditions of the Loan.  The obligation of Lender to make a Loan to Borrower under this Agreement is subject to the following: (a) the accuracy and correctness of the

representations and warranties of Borrower contained herein and in the other Loan Documents and in any certificate delivered pursuant to this Agreement, the SBA Authorizations or the other Loan Documents; (b) the performance by Borrower of its agreements contained herein and in the other Loan Documents; and (c) prior to the execution of the Note, the satisfaction and continued satisfaction of each of the following conditions:

5.2     Note.  The Note, in form and substance satisfactory to Lender and its counsel, shall have been duly authorized, executed and delivered by Borrower, shall be in full force and effect and no default shall exist thereunder, and Lender shall have received fully executed copies thereof.

5.3     Uniform Commercial Code Financing Statements.   All filings of Uniform Commercial Code financing statements and all other filings or recordations necessary to perfect the security interest of Lender in the Collateral shall have been filed and confirmation thereof received in a form acceptable to Lender that such security interest constitutes a valid and perfected first priority security interest therein, subject only to liens excepted to by Lender.

5.4     Certificate of Secretary of Borrower.  Lender shall have received a certificate of the Secretary or an Assistant Secretary of Borrower certifying (a) that attached thereto is a true and complete copy of resolutions adopted by the members of Borrower, authorizing the execution, delivery and performance of this Agreement and the other Loan Documents, and (b) as to the incumbency and genuineness of the signature of each officer of Borrower executing this Agreement or any of the other Loan Documents.

5.5     Taxes.  All taxes, fees and other charges in connection with the execution, delivery, recording, filing and registration of any financing statement or any of the Loan Documents shall have been paid by Borrower.

5.6     Status of Title.  Borrower shall be the owner of the Collateral free and clear of any liens and encumbrances, except liens approved by Lender.

5.7     No Injunction, Etc.  No action, proceeding, investigation, regulation or legislation shall have been instituted, threatened or proposed before any court, governmental agency or legislative body to enjoin, restrain, or prohibit, or to obtain substantial damages in respect of, or which is related to or arises out of this Agreement or the consummation of the transactions contemplated hereby, or which, in Lender's sole discretion, would make it inadvisable to consummate the transactions contemplated by this Agreement.

5.8     No Material Adverse Change.  There shall not have occurred any material adverse change in the business, financial condition or results of operations of Borrower, or any event, condition or state of facts which would be expected materially and adversely to affect the business, financial condition or results of operations of Borrower.

5.9     Availability.  The amounts which Lender is willing to lend to Borrower hereunder shall be adequate, in Lender's sole judgment and discretion, for the purposes referred to in the SBA Authorization.

5.10    Guarantee. The Guarantee, in form and substance satisfactory to Lender and its counsel, has been duly executed and delivered by Guarantor to Lender.

5.11    Proceedings and Documents. All certificates and other instruments and all proceedings in connection with the transactions contemplated by this Agreement shall be satisfactory in form and substance to Lender and its counsel. Lender shall have received copies of all other instruments and other evidence as Lender may reasonably request, in form and substance satisfactory to Lender and its counsel, with respect to the transactions contemplated by this Agreement and the taking of all actions in connection therewith.

5.12    Event of Default. No Event of Default, nor any event or condition which, with notice, lapse of time or the making of any Loan, would constitute an Event of Default, shall have occurred and be continuing.

5.13    Waiver of Conditions Precedent. If Lender makes any Loan hereunder prior to the fulfillment of any of the conditions precedent set forth in this SECTION 5 hereof, the making of such Loan shall constitute only an extension of time for the fulfillment of such condition and not a waiver thereof, and Borrower shall thereafter use their best efforts to fulfill each such condition promptly.

## SECTION 6. REPRESENTATIONS AND WARRANTIES.

In order to induce Lender to enter into this Agreement and to make the Loan, Borrower makes the following warranties and representations to Lender:

6.1    Organization and Power. Jordan is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Tennessee; (b) is qualified to do business and is in good standing in every other jurisdiction where the nature of its business or the ownership of its properties requires it to be so qualified; (c) has the power to own and give security interests in the Collateral, and to engage in the transactions contemplated hereby; and (d) has the full power, authority and legal right to execute and deliver this Agreement and the other Loan Documents and to perform and observe the terms and provisions thereof.

Erin is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Tennessee; (b) is qualified to do business and is in good standing in every other jurisdiction where the nature of its business or the ownership of its properties requires it to be so qualified; (c) has the power to own and give security interests in the Collateral, and to engage in the transactions contemplated hereby; and (d) has the full power, authority and legal right to execute and deliver this Agreement and the other Loan Documents and to perform and observe the terms and provisions thereof.

Midtown is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Tennessee; (b) is qualified to do business and is in good standing in every other jurisdiction where the nature of its business or the ownership of its properties requires it to be so qualified; (c) has the power to own and give security interests in the Collateral, and to engage in the transactions contemplated hereby; and (d) has the full power, authority and legal right to execute and deliver this Agreement and the other Loan Documents and to perform and observe the terms and provisions thereof.

7

Germantown is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Tennessee; (b) is qualified to do business and is in good standing in every other jurisdiction where the nature of its business or the ownership of its properties requires it to be so qualified; (c) has the power to own and give security interests in the Collateral, and to engage in the transactions contemplated hereby; and (d) has the full power, authority and legal right to execute and deliver this Agreement and the other Loan Documents and to perform and observe the terms and provisions thereof.

Hacks is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Tennessee; (b) is qualified to do business and is in good standing in every other jurisdiction where the nature of its business or the ownership of its properties requires it to be so qualified; (c) has the power to own and give security interests in the Collateral, and to engage in the transactions contemplated hereby; and (d) has the full power, authority and legal right to execute and deliver this Agreement and the other Loan Documents and to perform and observe the terms and provisions thereof.

6.2    Litigation: Government Regulation.  There are no actions, suits or proceedings pending or, to the knowledge of Borrower, threatened against or affecting Borrower at law or in equity before any court or administrative officer or agency which might result in a material adverse change in the business or financial condition of Borrower or impair Borrower's ability to perform its obligations under the Loan Documents. Borrower is not in violation of or in default under any applicable statute, rule, order, decree, writ, injunction or regulation of any governmental body (including any court) where such violation would have a materially adverse effect upon the Collateral, or Borrower's business, property, assets, operations or condition, financial or otherwise.

6.3    Taxes.  Borrower is not delinquent in the payment of any taxes which have been levied or assessed by any governmental authority against it or its assets. Borrower has timely filed all tax returns which are required by law to be filed, and has paid all taxes shown on said returns and all other assessments or fees levied upon Borrower or upon its properties to the extent that such taxes, assessments or fees have become due. To the knowledge of Borrower, no material controversy in respect of income taxes is pending or threatened.

6.4    Enforceability of Loan Documents; Compliance with Other Instruments.  The Loan Documents are the legal, valid and binding obligations of Borrower, enforceable against Borrower in accordance with their respective terms. Borrower is not in default with respect to any indenture, loan agreement, mortgage, lease, deed or similar agreement related to the borrowing of monies to which Borrower is a party or by which it is bound.

6.5    Full Disclosure.  None of the Loan Documents, nor any statements furnished by or on behalf of Borrower or Guarantor to Lender in connection with the Loan Documents, contain any untrue statement of a material fact or omit a material fact necessary to make the statements contained therein or herein not misleading. To the best of Borrower's knowledge, there is no fact which Borrower or Guarantor has not disclosed to Lender in writing which materially affects adversely or, to the best of Borrower's knowledge, will materially affect adversely the Collateral, other assets, business, profits or conditions (financial or otherwise) of Borrower or Guarantor or the ability of Borrower or Guarantor to perform the Obligations.

6.6    Principal Place of Business.  Borrower's chief executive offices are at the addresses set forth on page one of this Agreement.  Any additional location of Borrower's assets is set forth on Schedule 6.6 attached hereto.  Any change in the address shall be given to Lender pursuant to Section 15.2.

6.7    Title to Assets.  Borrower has good, indefeasible and merchantable title to and ownership of the Collateral, and all of its other assets, free and clear of all liens, claims, security interests and encumbrances except those in favor of Lender or excepted to by Lender.

6.8    Use of Proceeds.  Borrower's use of the proceeds of any Loan made by Lender to Borrower pursuant to this Agreement is, and continues to be, a legal and proper corporate use (duly authorized by Borrower's Boards of Directors and/or shareholders) and such use is and will be consistent with all applicable laws and statutes, as in effect from time to time.

## SECTION 7. AFFIRMATIVE COVENANTS.

Until payment, in full, of all Obligations of Borrower to Lender, Borrower covenants and agrees that, unless Lender consents in writing:

7.1    Repayment of Obligations.  Borrower will repay the Obligations according to the terms of this Agreement and the other Loan Documents.

7.2    Performance Under Loan Documents.  Borrower will perform all Obligations required to be performed by it under the terms of this Agreement and the other Loan Documents and any other agreements now or hereafter existing or entered into between Borrower and Lender.

7.3    Financial and Business Information as to Borrower.  Borrower shall deliver to Lender:

(a)    Within forty-five (45) days of each quarter-end, beginning with the quarter ending December 31, 2012, quarterly internally prepared financial statements of Borrower;

(b)    Within sixty (60) days after the close of the fiscal year of Borrower, beginning with the current fiscal year, financial statements of Borrower as of the close of such fiscal year compiled by outside accountants and accompanied by a statement signed by the President of Borrower that the statements accurately reflect the financial condition of Borrower;

(c)    Within thirty (30) days after their filings, copies of Borrower's federal and state income tax returns;

(d)    Within forty-five (45) days of the end of each calendar year, personal financial statements of Guarantor prepared on such forms as shall be acceptable to Lender, and within thirty (30) days after the filings, copies of Guarantor's federal income tax return; and

9

(e)    Upon Lender's written request, such other information about the Collateral or the financial condition and operations of Borrower as Lender may from time to time reasonably request.

7.4    <u>Corporate Existence and Maintenance of Properties</u>.  Borrower shall maintain and preserve its existence and all rights, privileges and franchises now enjoyed; and Borrower shall conduct its business in an orderly, efficient and customary manner.  Borrower shall file or cause to be filed in a timely manner all returns, reports, applications, estimates and licenses which shall be required by any governmental authority and which, if not timely filed, would have a material adverse effect on Borrower or the Collateral.

7.5    <u>Payment of Indebtedness: Performance of Other Obligations</u>.  Borrower shall pay all indebtedness for borrowed money at maturity, all taxes, assessments and other governmental charges which may be levied or assessed upon Borrower or the Collateral when due and all other obligations in accordance with customary trade practices, and comply with all acts, rules, regulations and orders of any legislative, administrative or judicial body or official applicable to the Collateral or any part thereof or to the operation of Borrower's business; provided, however, that Borrower may in good faith by appropriate proceedings and with due diligence contest any such taxes, assessments, governmental charges, acts, rules, regulations, orders and directions that do not, in Lender's judgment, materially adversely affect the value of the Collateral or the priority of Lender's lien in the Collateral, and if requested by Lender, shall establish reserves reasonably satisfactory to Lender. Borrower shall also observe and remain in compliance with all laws, ordinances, governmental rules and regulations to which it is subject and obtain all licenses, permits, franchises or other governmental authorizations necessary to the ownership of its properties or the conduct of its business, and all covenants and conditions of all agreements and instruments to which Borrower is a party, which failure to comply or failure to obtain would materially adversely affect the business, prospects, profits, properties or condition (financial or otherwise) of Borrower.

7.6    <u>Maintenance of Insurance</u>.  Borrower shall maintain and pay for insurance upon all Collateral, wherever located, covering casualty, hazard, and other risks, and in such amounts and with such insurance companies as shall be reasonable satisfactory to Lender, and deliver such certificates of insurance to Lender with satisfactory loss payable endorsements naming Lender as loss payee thereunder. Each policy of insurance shall contain a clause requiring the insurer to give not less than thirty (30) days prior written notice to Lender before any cancellation of the policies for any reasons whatsoever. Borrower hereby directs all insurers under such policies of insurance of the Collateral to pay all proceeds payable thereunder directly to Lender. Lender (and all officers, employees or agents designated by Lender) shall be, and is hereby constituted and appointed as Borrower's true and lawful attorney (and agent-in-fact) for the purpose of making, settling and adjusting claims under such policies of insurance, endorsing the name of Borrower, or any check, draft, instrument or other item or payment for the proceeds of such policies of insurance and for making all determinations and decisions with respect to such policies of insurance. If Borrower fails to obtain and maintain any of the policies of insurance or to pay any premium, in whole or in part, then Lender may, at Borrower's expense, without waiving or releasing any obligation or default by Borrower hereunder, procure the same, but shall not be required to do so. All sums so disbursed by Lender, including reasonable attorney's fees, court costs, expenses and other charges related thereto, shall be payable on

10

demand by Borrower to Lender and shall be additional Obligations hereunder secured by the Collateral. Borrower shall deliver to Lender, promptly as rendered, true copies of all monthly reports made in any reporting forms to insurance companies. Not less than thirty (30) days prior to the expiration date of the insurance policies required to be maintained by Borrower hereunder, Borrower shall deliver to Lender one or more certificates of insurance evidencing renewal of the insurance coverage required hereunder, plus such other evidence of payment of premiums therefor as Lender may request.

7.7    SBA Requirements.  Borrower shall:

(a)    Provide Lender with all certifications, documents or other information Lender is required by the SBA Authorization to obtain from Borrower or any third party;

(b)    Do everything necessary for Lender to comply with the terms and conditions of the SBA Authorization.

## SECTION 8. NEGATIVE COVENANTS.

Until payment in full of all Obligations to Lender, Borrower covenants and agrees that, unless Lender consents in writing within thirty (30) days from the date of the request of the Borrower (if no written response is received within thirty (30) days, the Lender does not consent to the request), Borrower will not:

8.1    Merger and Dissolution.  Liquidate or dissolve, or enter into any consolidation, merger, syndication or other combination or sell, lease or dispose of its business or assets as a whole or such part as in the opinion of Lender constitutes a substantial portion of its business or assets.

8.2    Acquisitions.  Acquire the business or all or a substantial portion of the assets of any entity, whether by purchase of stock, assets or otherwise.

8.3    Indebtedness.  Create, incur or suffer to exist any new indebtedness except in the ordinary course of business and only in the event that in creating or incurring such indebtedness, Borrower is otherwise in compliance with the terms of this Agreement.

8.4    Liens and Encumbrances.  Create, assume or suffer to exist any encumbrance or other lien (including a lien of attachment, judgment or execution) or security interest (including the interest of a conditional seller of goods), securing a charge or obligation, on any of the Collateral.

8.5    Disposition of Assets.  Sell, lease, transfer, convey or otherwise dispose of any of its assets or property except for sales of Inventory in the ordinary course of business.

8.6    Restrictions on Dividends.  Declare or pay any distributions upon any of its membership interests or purchase, redeem or otherwise acquire, directly or indirectly, any of its membership interests, or make any distribution of cash, property or assets among the holders of membership interests, nor shall Borrower make any material change in its capital structure.

8.7    New Business. Engage in any business other than the business in which Borrower is currently engaged or a business reasonably related thereto or make any material change in any of its business objectives, purposes and operations which might in any way adversely affect the repayment of the Obligations.

8.8    Subsidiaries. Create any subsidiary or transfer any assets to a subsidiary.

8.9    Guaranties. Guarantee or otherwise, in any way, become liable with respect to the obligations or liabilities of any person or entity.

8.10    Transactions Affecting the Collateral.    Borrower shall not enter into any transaction which materially and adversely affects the Collateral, or Borrower's ability to repay any Indebtedness, and Borrower, except in the ordinary course of business, shall not permit or agree to any extension, compromise or settlement or make any change or modification of any kind or nature with respect to any Account, including any of the terms relating thereto. Discounts and allowances shall be considered to be in the ordinary course of business.

## SECTION 9. PROVISIONS WITH RESPECT TO THE COLLATERAL.

9.1    Location of Collateral. Borrower warrants and represents that: (a) The address specified above and the addresses set forth on Schedule 6.6 hereto are Borrower's principal places of business, including the states of its organization, (b) the address specified above and the addresses set forth in Schedule 6.6 hereto are where Borrower now or hereafter may keep Borrower's books and records with respect to the Accounts, including, without limitation, computer programs, printouts and other customer materials and records concerning the Accounts, (c) the address specified above and the addresses set forth in Schedule 6.6 hereto are where Borrower now or hereafter may keep Borrower's Inventory, (d) Borrower shall not remove its books and records pertaining to the Accounts or remove the Inventory, other than in connection with a sale of Inventory in the ordinary course of business, and shall not keep any of its books and records or the Inventory at any other offices or locations and (e) Borrower shall not re-domesticate in another state, unless (i) Borrower gives Lender written notice of such removal and the new location of the books and records and/or the Inventory  at least thirty (30) days prior thereto, (ii) Borrower prepares, executes and files appropriate financing statements with respect to the Collateral showing Borrower, as debtor, and Lender, as secured party, and after filing, conducts a search of all filings made against Borrower in the state in which the Borrower has re-domesticated and delivers to Lender copies of the results of all searches, and (iii) such searches confirm that Lender's security interest in the Collateral, shall be first and prior on the Collateral in such state of re-domestication.

## SECTION 10. SURVIVAL OF ALL WARRANTIES.

Borrower covenants, warrants and represents to Lender that all representations and warranties of Borrower contained in this Agreement and the other Loan Documents shall be true at the time of Borrower's execution of this Agreement and the other Loan Documents and shall survive the execution, delivery and acceptance thereof by the parties thereto and the closing of the transactions described therein or related thereto.

## SECTION 11. TERM OF AGREEMENT.

11.1    Term.  Subject to Lender's rights upon the occurrence of an Event of Default or any event or condition which, with notice, lapse of time would constitute an Event of Default, the provisions of this Agreement shall continue in full force and effect for a period of ten years and one month from the date hereof.

11.2    Lender's Right to Terminate.  Lender may terminate the financing arrangements under this Agreement and the other Loan Documents at any time, without demand, notice or legal process of any kind, upon the occurrence of an Event of Default; provided, however, that Lender shall retain the right to payment of the Obligations in accordance with the terms hereof and provided further that all of Lender's rights and remedies under this Agreement and the other Loan Documents shall survive such termination until all of the Obligations have been paid in full. On or before the termination date, Borrower shall pay the Obligations to Lender in full in immediately available funds.

11.3    Effect of Termination.  Notwithstanding any termination, until all Obligations to Lender of every nature whatsoever shall have been fully paid and satisfied, Lender shall be entitled to retain its security interest in the Collateral, and Borrower shall continue to comply fully with the terms of this Agreement and shall turn over all proceeds of the Collateral to Lender, and Lender shall retain all of its other rights and remedies hereunder.

## SECTION 12. EVENTS OF DEFAULT.

12.1    Event of Default.  The occurrence of any one or more of the following events shall constitute an "Event of Default:"

(a)    Borrower fails to pay any portion of the Obligations when due and payable or declared due and payable, or fails to remit or deposit items or funds as required by the terms of this Agreement;

(b)    Borrower fails or neglects to observe, perform or comply with any other term, provision, condition, covenant, warranty or representation contained in this Agreement or the other Loan Documents or in any other agreement now existing or hereafter executed evidencing, securing or relating in any way to the Obligations of Borrower, which is required to be observed, performed or complied with by Borrower and the same is not cured to Lender's satisfaction within the earlier of ten (10) days after Borrower's having knowledge thereof or Lender's giving Borrower written notice thereof;

(c)    If any representation or warranty made in writing by or on behalf of Borrower or the Guarantor in this Agreement or in the other Loan Documents or in any other agreement now existing or hereafter executed between Borrower or the Guarantor and Lender, or in connection with the transactions contemplated hereby or thereby, shall prove to have been false or incorrect in any material respect at the time as of which such representation or warranty was made;

(d)    The occurrence of any default or Event of Default on the part of Borrower (including specifically, but without limitation, due to non-payment) under the terms of any agreement, document or instrument pursuant to which Borrower has incurred any indebtedness (other than the Obligations), which default is not cured within the time, if any, permitted therefor in the agreement governing such Indebtedness;

(e)    The filing by Borrower or Guarantor of any voluntary petition seeking liquidation, reorganization, arrangement, readjustment of debts or for any other relief under the Bankruptcy Code or under any other act or law pertaining to insolvency or debtor relief, whether state, federal or foreign, now or hereafter existing;

(f)    The filing against Borrower or Guarantor of any involuntary petition seeking liquidation, reorganization, arrangement, readjustment of debts or for any other relief under the Bankruptcy Code or under any other act or law pertaining to insolvency or debtor relief, whether state, federal or foreign, now or hereafter existing, and such petition is not dismissed within thirty (30) days of the filing thereof or within such thirty (30) day period an order for relief under the Bankruptcy Code or any other applicable act or law shall be entered;

(g)    Borrower or Guarantor ceases to be solvent, or Borrower ceases to conduct its business as now conducted or is enjoined, restrained or in any way prevented by court order from conducting all or any material part of the business affairs and such failure shall continue for thirty (30) days after receipt of notice from Lender to Borrower or Guarantor specifying such default;

(h)    A notice of lien, levy or assessment is filed of record as to all or any portion of Borrower's assets by the United States, or any department, agency or instrumentality thereof, or by any state, county, municipal or other governmental agency, or if any taxes or debts owing at any time or times hereafter by it becomes a lien or encumbrance upon the Collateral or any other asset of Borrower and the same is not dismissed, released or discharged within thirty (30) days after the same becomes a lien or encumbrance or, in the case of ad valorem taxes, prior to the last day when payment may be made without penalty; provided however, the foregoing shall not apply to any lien, levy or assessment being contested in good faith by the Borrower;

(i)    The entry of a final judgment or the issuance of a warrant of attachment (other than as a part of a permitted lien), execution or similar process against Borrower or any of its assets, which shall not be dismissed, discharged or bonded within thirty (30) days;

(j)    If a custodian, trustee, receiver or assignee for the benefit of creditors is appointed or takes possession of the Collateral or any of Borrower's other assets and such failure shall continue for thirty (30) days after receipt of notice from Lender to Borrower specifying such default; or

(k)      If there is a significant deterioration in the financial condition of the Borrower or Guarantor and such failure shall continue for thirty (30) days after receipt of notice from Lender to Borrower specifying such default.

12.2     Acceleration of the Obligations.  Without in any way limiting the right of Lender to demand payment of any portion of the Obligations pursuant to the terms of this Agreement, upon and after an Event of Default, all of the Obligations may, at the option of Lender, and without demand, notice or legal process of any kind, be declared, and immediately shall become, due and payable, anything in the Note or any other contract evidencing any portion of the Obligations or in the Loan Documents or in any other agreement to the contrary notwithstanding.

12.3     Default Rate of Interest.  Upon the occurrence and during the continuance of an Event of Default, all of the Obligations shall continue to bear interest at the highest rate permitted by applicable law.

### SECTION 13. RIGHTS AND REMEDIES AFTER EVENT OF DEFAULT.

13.1     Rights and Remedies.  Upon and after the occurrence of any Event of Default, Lender shall have, in addition to all other rights and remedies which Lender may have under this Agreement, the other Loan Documents, and applicable law, the following rights and remedies, all of which may be exercised with or without further notice to Borrower: (a) all of the rights and remedies of a secured party under the Uniform Commercial Code of the State of Tennessee, or any other state where such rights and remedies are asserted; (b) to enforce the security interest created under this Agreement and the other Loan Documents or under any other agreement relating to the Collateral by any available judicial procedure or without judicial process; and (c) to sell, assign, lease, or otherwise dispose of the Collateral or any part thereof, either at public or private sale, in lots or in bulk, for cash, on credit or otherwise, with or without representation or warranties, and upon such terms as shall be acceptable to Lender, in its sole discretion, and Lender may bid or become the purchaser at any such public sale, free from any right of redemption which is hereby expressly waived by Borrower, and Lender shall have the option to apply or be credited with the amount of all or any part of the Obligations owing to Lender against the purchase price bid by Lender at any such sale. Lender may, if it deems it reasonable, postpone or adjourn any sale of the Collateral from time to time by an announcement at the time and place of such postponed or adjourned  sale, without being required to give a new notice of sale. Borrower agrees that in the event notice is necessary under applicable law, written notice mailed to Borrower in the manner specified in Section 15.2 hereof five (5) days prior to the date of public sale of any of the Collateral or prior to the date after which any private sale or other disposition of the Collateral will be made shall constitute commercially reasonable notice to Borrower.

13.2     Application of Proceeds.  The net cash proceeds resulting from the collection, liquidation, sale, lease or other disposition of the Collateral shall be applied first to the expenses (including all reasonable attorneys' fees) of retaking, holding, storing, processing and preparing for sale, selling, collecting, liquidating and the like, and then to the satisfaction of all Obligations.  Borrower shall be liable to Lender and shall pay to Lender on demand any deficiency which may remain after such sale, disposition, collection or liquidation of the

15

Collateral. Lender shall remit to Borrower or any person or entity entitled thereto any surplus remaining after all Obligations have been paid in full.

    13.3   Appointment of Lender as Borrower's Lawful Attorney.  Upon and after an Event of Default, Borrower irrevocably designates, makes, constitutes and appoints Lender (and all persons designated by Lender) as Borrower's true and lawful attorney (and agent-in-fact) and Lender, or Lender's agent, may, without notice to Borrower, and at such time or times thereafter as Lender or said agent, in its sole discretion, may determine, in Borrower's or Lender's name: (i) demand payment of the Accounts; (ii) enforce payment of the Accounts, by legal proceedings or otherwise; (iii) exercise all of Borrower's rights and remedies with respect to the collection of the Accounts; (iv) settle, adjust, compromise, extend or renew the Accounts; (v) settle, adjust or compromise any legal proceedings brought to collect the Accounts; (vi) if permitted by applicable law, sell or assign the Accounts upon such terms, for such amounts and at such time or times as Lender deems advisable; (vii) discharge and release the Accounts; (viii) take control, in any manner, of any item of payment or proceeds; (ix) prepare, file and sign Borrower's name on a proof of claim in bankruptcy or similar document against any Account Debtor; (x) prepare file and sign Borrower's name on any notice of lien, assignment or satisfaction of lien or similar document in connection with the Accounts; (xi) do all acts and things necessary, in Lender's sole discretion, to fulfill Borrower's obligations under this Agreement; (xii) endorse the name of Borrower upon any of the items of payment or proceeds and deposit the same to the account of Lender on account of the Obligations; (xiii) endorse the name of Borrower upon any chattel paper, documents, instrument, invoice, freight bill, bill of lading or similar document or agreement relating to the Accounts; (xiv) use Borrower's stationery and sign the name of Borrower to verifications of the Accounts and notices thereof to Account Debtors; (xv) use the information recorded on or contained in any data processing equipment and computer hardware and software relating to the Accounts to which Borrower has access; and (xvi) use any license issued in the name of Borrower by the State of Tennessee or otherwise to sell in Borrower's name any of Borrower's Inventory. All acts of Lender or its designee taken pursuant to this Section 13.3 are hereby ratified and confirmed and Lender or its designee shall not be liable for any acts of omission or commission nor for any error of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable by Borrower until all Obligations of Borrower to Lender are paid in full.

    13.4   Rights and Remedies Cumulative: Non-Waiver. Etc.  The enumeration of Lender's rights and remedies set forth in this Agreement is not intended to be exhaustive and the exercise by Lender of any right or remedy shall not preclude the exercise of any other rights or remedies, all of which shall be cumulative, and shall be in addition to any other right or remedy given hereunder, under the Loan Documents or under any other agreement between Borrower and Lender or which may now or hereafter exist in law or in equity or by suit or otherwise. No delay or failure to take action on the part of Lender in exercising any right, power or privilege shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or privilege preclude other or further exercise thereof or the exercise of any other right, power or privilege or shall be construed to be a waiver of any Event of Default. No course of dealing between Borrower and Lender or its agents or employees shall be effective to change, modify or discharge any provision of this Agreement or to constitute a waiver of any Event of Default. Lender shall not, under any circumstances or in any event whatsoever, have any liability for any

16

error, omission or delay of any kind occurring in the liquidation of the Collateral or for any damages resulting therefrom.

13.5 Set-Off. The Lender shall have a right of set-off, in the full amount of all of the Borrower's Obligations to the Lender hereunder, any deposits, assets held by, or other amounts owed by the Lender to, or held by the Lender for, the Borrower, as well as a lien on any and all property of the Borrower which is or may be in the Lender's possession, at any time or from time to time, without notice to the Borrower or to any other person, any such notice being hereby expressly waived.

## SECTION 14. PAYMENT OF EXPENSES.

14.1 Borrower's Obligations. Whether or not the transactions contemplated by this Agreement shall be consummated, Borrower will pay or reimburse Lender upon demand for all expenses (including, without limitation, reasonable attorneys and paralegals' expenses) incurred or paid by Lender in connection with: (a) the preparation of this Agreement, the Note and any other Loan Documents; (b) the modification or amendment of this Agreement or the other Loan Documents; (c) any litigation, contest, dispute, suit, proceeding or action (whether instituted by Lender, Borrower or any other person or entity, including reasonable attorneys' fees and paralegals' expenses) in any way relating to the Collateral, this Agreement or the other Loan Documents, or Borrower's affairs; (d) any attempt to enforce any rights of Lender against Borrower or any other person or entity who may be obligated to Lender by virtue of this Agreement or the other Loan Documents, including without limitation, the Account Debtors; (e) any attempt to inspect, verify, protect, collect, sell, liquidate or otherwise dispose of the Collateral; or (f) the filing and recording of all documents required by Lender to perfect Lender's liens in the Collateral, including without limitation, any taxes incurred because of such filing or recording.

## SECTION 15. MISCELLANEOUS.

15.1 Governing Law. This Agreement has been executed, delivered and accepted, and shall be deemed to have been made, in the State of Tennessee, and shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the internal laws (as opposed to conflicts of law provisions) of the State of Tennessee. The Loan contemplated by this Agreement are to be funded to Borrower and this Agreement is otherwise to be performed in the State of Tennessee. Borrower consents to the jurisdiction and venue of the courts sitting in Shelby County, Tennessee to hear any and all disputes arising hereunder.

15.2 Notice. Any notices or other communication hereunder shall be in writing and shall be made by telegram, overnight delivery service, telex or electronic transmitter or certified or registered mail, return receipt requested, and shall be received by the addressee one (1) business day after sending, if sent by telegram, overnight delivery service, telex or electronic transmitter, and deemed to have been validly served, given or delivered three (3) business days after mailing, if sent by certified or registered mail. Notices shall be addressed as provided below:

If to Borrower:        Jordan Enterprises, LLC
                       Holiday Erin, LLC
                       Holiday Midtown, LLC
                       Holiday Germantown, LLC
                       Hacks Holiday, LLC
                       Attn:  Lucius D. Jordan III
                       700 Colonial Road, Suite 225
                       Memphis, Tennessee 38117

If to Lender at:       Magna Bank
                       6525 Quail Hollow Road, Suite 513
                       Memphis, Tennessee  38120
                       Attn: Scott Williams

With copy to:          Richard E. M. Nichol, Jr.
                       Evans | Petree PC
                       1000 Ridgeway Loop Road, Suite 200
                       Memphis, Tennessee 38120

If to Guarantor:       Lucius D. Jordan III
                       4591 Minden Road
                       Memphis, Tennessee 38117

or to such other address as each party may designate for itself by like notice.

15.3    Waivers.  Except as otherwise provided for in this Agreement, Borrower and Guarantor waive (a) presentment, demand and protest and notice of presentment, protest, default, nonpayment, maturity and all other notices; (b) notice prior to taking possession or control of the Collateral or any bond or security which might be required by any court prior to allowing Lender to exercise any of Lender's remedies; and (c) the benefit of all valuation, appraisement and exemption laws.

15.4    Lawful Charges.  It being the intent of the parties that the rate of interest and all other charges due from Borrower be lawful, if for any reason payment of a portion of interest or charges as required by this Agreement would exceed the limit established by applicable law, then the obligation to pay interest or charges shall automatically be reduced to such limit and if any amounts in excess of such limit shall have been paid, then such amounts shall be applied to the unpaid principal amount of the Obligations of Borrower to Lender or refunded so that under no circumstances shall interest or charges required hereunder exceed the maximum rate allowed by law.

15.5    Amendment.  This Agreement and the other Loan Documents cannot be amended, changed, discharged or terminated orally, but only by an instrument in writing signed by Lender and Borrower.

15.6    Severability.  To the extent any provision of this Agreement is prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition

18

or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

15.7    Entire Agreement.  This Agreement and the other documents, certificates and instruments referred to herein constitute the entire agreement between the parties and supersede and rescind any prior agreements relating to the subject matter hereof.

15.8    Binding Effect.  All of the terms of this Agreement and other Loan Documents, as the same may from time to time be amended, shall be binding upon, inure to the benefit of and be enforceable by the respective successors and assigns of Borrower and Lender.

15.9    Captions.  The captions, section headings, and section references to the various sections and subsections of this Agreement have been inserted for convenience and reference only and shall not limit or affect any of the terms hereof

15.10   Disbursement of Loan Proceeds.  Borrower hereby authorizes and directs Lender to disburse, for and on behalf of Borrower and for Borrower's account, the proceeds of Loan made by Lender to Borrower pursuant to this Agreement.

15.11   Conflict of Terms.  The provisions of the other Loan Documents are incorporated in this Agreement by this reference thereto. Except as otherwise provided in this Agreement and except as otherwise provided in the other Loan Documents, if any provision contained in this Agreement is in conflict with, or inconsistent with, any provision of the other Loan Documents, the provision contained in this Agreement shall control.

15.12   Injunctive Relief.  Borrower recognizes that in the event Borrower fails to perform, observe or discharge any of its obligations or liabilities under this Agreement, any remedy of law may prove to be inadequate relief to Lender. Borrower, therefore, agrees that Lender, if Lender so requests, shall be entitled to temporary and permanent injunctive relief in any such case without the necessity of proving actual damages.

15.13   General Conditions.  The following conditions shall be applicable throughout the term of this Agreement:

(a)    Lender has no obligation except to advance the sums upon the terms as herein set forth, and is not obligated to inspect the Collateral; nor is it liable to protect or insure the Collateral or for the payment of any cost or expense incurred in connection therewith, or for the performance or non-performance of any obligation of Borrower or Guarantor to Lender; and nothing, including without limitation any disbursement hereunder or acceptance of any document or instrument, shall be construed as a representation or warranty, express or implied, on Lenders part.

(b)    The relationship between Borrower and Lender is, and shall at all times remain, solely that of borrower and lender, and Lender neither undertakes nor assumes any responsibility or duty to Borrower to select, review, inspect, supervise, pass judgment upon or inform Borrower of the quality, adequacy or suitability of any of the Collateral, the credit worthiness of its customers or the progress or course of marketing.

19

   (c)  In no event shall the Lender's rights hereunder be deemed to indicate that the Lender is in control of the business, management or properties of the Borrower or has power over the daily management functions and operating decisions made by the Borrower.

  15.14 <u>Small Business Administration Loan</u>.  Notwithstanding anything contained herein to the contrary:

> *The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners.  If the United States is seeking to enforce this document, then under SBA regulations:*
>
> *a)  When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.*
>
> *b)  Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes.  By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability.  No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.*
>
> *Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.*

**(Signature Pages Follow)**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and sealed in their corporate name by their duly authorized corporate officers as of the date first above written.

**BORROWERS:**

Jordan Enterprises, LLC
a Tennessee limited liability company

By: _____
Name:   Lucius D. Jordan III
Title:    Chief Manager

Holiday Erin, LLC
a Tennessee limited liability company

By: _____
Name:   Lucius D. Jordan III
Title:    Chief Manager

Holiday Midtown, LLC
a Tennessee limited liability company

By: _____
Name:   Lucius D. Jordan III
Title:    Chief Manager

Holiday Germantown, LLC
a Tennessee limited liability company

By: _____
Name:   Lucius D. Jordan III
Title:    Chief Manager

Hacks Holiday, LLC
a Tennessee limited liability company

By: _____
Name:   Lucius D. Jordan III
Title:    Chief Manager

**GUARANTOR:**

_____
Lucius D. Jordan III

**LENDER:**

Magna Bank

By: _____
Name:   Tom Stewart
Title:    Vice President

Signature Page to Loan & Security Agreement

21

## Schedule 6.6
## Physical Locations

Jordan Enterprises, LLC
700 Colonial Road
Suite 225
Memphis, Tennessee 38117

Holiday Erin, LLC
585 Erin Drive
Memphis, Tennessee 38117

Holiday Midtown, LLC
2087 Union Avenue
Memphis, Tennessee 38104

Holiday Germantown, LLC
7652 Poplar Avenue
Memphis, Tennessee 38138

Hacks Holiday, LLC
3750 Hacks Cross Road
Memphis, Tennessee 38125

## FIRST AMENDMENT TO LOAN AND SECURITY AGREEMENT
## AND OTHER LOAN DOCUMENTS

THIS FIRST AMENDMENT TO LOAN AND SECURITY AGREEMENT AND OTHER LOAN DOCUMENTS (the "Agreement") made and entered into as of this 29th day of December, 2015, by and between **PINNACLE BANK**, a Tennessee state chartered bank, as successor in interest to Magna Bank, with its principal office at 6525 Quail Hollow Road, Suite 513, Memphis, Tennessee 38120 ("Lender"); **JORDAN ENTERPRISES, LLC,** a Tennessee limited liability company with its principal office at 700 Colonial Road, Suite 225, Memphis, Tennessee 38117 ("Jordan"); **HOLIDAY ERIN, LLC,** a Tennessee limited liability company with its principal office at 700 Colonial Road, Suite 225, Memphis, Tennessee 38117 ("Erin"); **HOLIDAY MIDTOWN, LLC,** a Tennessee limited liability company with its principal office at 700 Colonial Road, Suite 225, Memphis, Tennessee 38117 ("Midtown"); **HOLIDAY GERMANTOWN, LLC,** a Tennessee limited liability company with its principal office at 700 Colonial Road, Suite 225, Memphis, Tennessee 38117 ("Germantown"); **HACKS HOLIDAY, LLC,** a Tennessee limited liability company with its principal office at 700 Colonial Road, Suite 225, Memphis, Tennessee 38117 ("Hacks") (Jordan, Erin, Midtown, Germantown and Hacks are collectively referred to herein as the "Original Borrowers"); and **HOLIDAY HAM HOLDINGS, LLC,** a Tennessee limited liability company with its principal office at 5885 Ridgeway Center Parkway, Suite 110, Memphis, Tennessee 38120-4011 ("HHH") (the Original Borrowers and HHH are referred to herein collectively as the "Borrower"); and **LUCIUS D. JORDAN III** (the "Guarantor").

### WITNESSETH:

WHEREAS, on December 5, 2012, the Original Borrowers entered into a U. S. Small Business Administration Note (the "Note") with Magna Bank pursuant to which Magna Bank advanced the sum of One Million Eight Hundred Fifty Thousand Dollars ($1,850,000.00) to the Original Borrowers (the "Loan") as further evidenced by that certain Loan and Security Agreement of even date therewith (the "Loan Agreement") and other Loan Documents (as such term is defined in the Loan Agreement); and

WHEREAS, the Original Borrowers wish to reorganize their structure, upon which reorganization the Original Borrowers will become wholly-owned subsidiaries of HHH; and

WHEREAS, Lender has agreed to the reorganization, subject to the terms and conditions of this Agreement;

NOW, THEREFORE, for mutual consideration, the receipt and sufficiency of which is hereby acknowledge, the parties agree as follows:

1.  <u>Joinder of HHH</u>.  HHH joins in the execution of this Agreement for the purpose of acknowledging its obligations under this Agreement, the Loan Agreement, the Note, and the other Loan Documents, and agreeing to be bound thereby.

2.  <u>Defined Terms</u>.

The definition of "Borrower" is deleted and replaced with the following:

"Borrower" shall mean Jordan, Erin, Midtown, Germantown, Hacks and HHH.

1

3.    Security Interest in Collateral. The following paragraph is added to Section 4.1 of the Loan Agreement:

> To secure the prompt payment and performance of all of the Obligations, HHH hereby pledges and assigns to Lender and grants to Lender a first perfected security interest and a continuing general security interest in and to the following assets, property and interests in property of, whether now owned or existing or at any time hereafter acquired, arising or created, wherever located: Equipment, Inventory, Accounts, Instruments, Chattel Paper, and General Intangibles. The security interest herein granted shall give Lender a continuing lien in, on and to all of these goods, and the proceeds and products thereof and thereto, and any replacements, additions, accessions or substitutions thereof, including, without limitation, the proceeds of insurance covering the Collateral.

4.    The following address is added to Schedule 6.6 to the Loan Agreement as HHH's Physical Location:

> Holiday Ham Holdings, LLC
> Suite 110
> 5885 Ridgeway Center Parkway
> Memphis, Tennessee 38120-4011

5.    HHH agrees to sign a joinder to the Note such other joinder documents as Lender may reasonably require.

6.    Borrower shall be responsible for payment of all Lender's attorneys, fees and expenses in connection with this Agreement.

7.    Except as herein modified, the Loan Agreement and other Loan Documents shall remain in full force and effect, and the Loan Agreement and other Loan Documents, as so modified, are hereby ratified and affirmed in all respects by the Borrower and Lender.

8.    Borrower confirms that it has no offsets or defenses with respect to its obligations pursuant to the Loan Agreement or any of the other Loan Documents, as herein modified.

9.    Borrower represents and warrants that there are no defaults or Events of Default under the Loan Agreement or any of the other Loan Documents.

10.    The Guarantor joins in the execution of this Agreement to acknowledge his consent to the terms hereof, and to acknowledge that the Guarantee Agreement dated December 5, 2012 (the "Guarantee") and any other Loan Documents executed by the Guarantor remains in full force and effect, and is hereby ratified and affirmed in all respects and extend to the Loan Agreement and other Loan Documents, as so modified and amended.  Guarantor confirms that he has no defenses or setoffs with respect to his obligations pursuant to the Guarantee or any other Loan Documents. Upon request of Lender, the Guarantor will execute a replacement Guarantee.

**11.    TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM,**

COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (i) ARISING OUT OF OR IN ANY WAY PERTAINING OR RELATING TO THIS AGREEMENT, OR THE LOAN AGREEMENT, OR (ii) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THIS AGREEMENT OR THE LOAN AGREEMENT OR IN CONNECTION WITH THE TRANSACTIONS RELATED THERETO OR CONTEMPLATED THEREBY OR THE EXERCISE OF THE PARTIES' RIGHTS AND REMEDIES THEREUNDER, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE. BORROWERS AND GUARANTOR AGREE THAT LENDER MAY FILE A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED AGREEMENT OF THE PARTIES IRREVOCABLY TO WAIVE THEIR RIGHTS TO TRIAL BY JURY, AND THAT, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN THE PARTIES SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

*The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:*

*a)       When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.*

*b)       Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.*

*Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.*

(Signature Page Follows)

3

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers, agents or members as of the year and date first above written.

**BORROWERS:**

Jordan Enterprises, LLC
a Tennessee limited liability company

By: _____
Name: Lucius D. Jordan III
Title: Chief Manager

Holiday Erin, LLC
a Tennessee limited liability company

By: _____
Name: Lucius D. Jordan III
Title: Chief Manager

Holiday Midtown, LLC
a Tennessee limited liability company

By: _____
Name: Lucius D. Jordan III
Title: Chief Manager

Holiday Germantown, LLC
a Tennessee limited liability company

By: _____
Name: Lucius D. Jordan III
Title: Chief Manager

Hacks Holiday, LLC
a Tennessee limited liability company

By: _____
Name: Lucius D. Jordan III
Title: Chief Manager

Holiday Ham Holdings, LLC
a Tennessee limited liability company

By: _____
Name: Lucius D. Jordan III
Title: President

GUARANTOR:

Lucius D. Jordan III

LENDER:

Magna Bank, a division of Pinnacle Bank

By:

Name:   Scott Williams

Title:   Senior Vice President

Signature Page to First Amendment to Loan and Security Agreement and Other Loan Documents

LENDER:

Pinnacle Bank

By:

Name: ANDY WRIGHT

Title: SENIOR VICE PRESIDENT

4840-3565-4953, v. 1

5

## SECOND AMENDMENT TO LOAN AND SECURITY AGREEMENT
## AND OTHER LOAN DOCUMENTS

THIS SECOND AMENDMENT TO LOAN AND SECURITY AGREEMENT AND OTHER LOAN DOCUMENTS (the "Agreement") made and entered into as of this 5th day of November, 2019, by and between **PINNACLE BANK**, a Tennessee state chartered bank, as successor in interest to Magna Bank, with its principal office at 949 Shady Grove Road South, Suite 200, Memphis, Tennessee 38120 ("Lender"); **JORDAN ENTERPRISES, LLC,** a Tennessee limited liability company with its principal office at 700 Colonial Road, Suite 225, Memphis, Tennessee 38117 ("Jordan"); **HOLIDAY ERIN, LLC,** a Tennessee limited liability company with its principal office at 700 Colonial Road, Suite 225, Memphis, Tennessee 38117 ("Erin"); **HOLIDAY MIDTOWN, LLC,** a Tennessee limited liability company with its principal office at 700 Colonial Road, Suite 225, Memphis, Tennessee 38117 ("Midtown"); **HOLIDAY GERMANTOWN, LLC,** a Tennessee limited liability company with its principal office at 700 Colonial Road, Suite 225, Memphis, Tennessee 38117 ("Germantown"); **HACKS HOLIDAY, LLC,** a Tennessee limited liability company with its principal office at 700 Colonial Road, Suite 225, Memphis, Tennessee 38117 ("Hacks") (Jordan, Erin, Midtown, Germantown and Hacks are collectively referred to herein as the "Original Borrowers"); and **HOLIDAY HAM HOLDINGS, LLC,** a Tennessee limited liability company with its principal office at 5885 Ridgeway Center Parkway, Suite 110, Memphis, Tennessee 38120-4011 ("HHH") (the Original Borrowers and HHH are referred to herein collectively as the "Borrower"); and **LUCIUS D. JORDAN III** (the "Guarantor").

### WITNESSETH:

WHEREAS, on December 5, 2012, the Original Borrowers entered into a U. S. Small Business Administration Note (the "Note") with Magna Bank pursuant to which Magna Bank advanced the sum of One Million Eight Hundred Fifty Thousand Dollars ($1,850,000.00) to the Original Borrowers (the "Loan") as further evidenced by that certain Loan and Security Agreement of even date therewith (the "Loan Agreement") and other Loan Documents (as such term is defined in the Loan Agreement); and

WHEREAS, the Original Borrowers reorganized their structure, upon which reorganization the Original Borrowers became wholly-owned subsidiaries of HHH;

WHEREAS, on December 29, 2015 Borrowers and Lender entered into that certain First Amendment to Loan and Security Agreement and Other Loan Documents (the "First Amendment") modifying the terms of the Loan and joining HHH as a Borrower;

WHEREAS, Borrowers have requested that Lender further modify the terms of the Loan, and Lender has agreed to such modification, subject to the terms and conditions of this Agreement;

NOW, THEREFORE, for mutual consideration, the receipt and sufficiency of which is hereby acknowledge, the parties agree as follows:

1.    The third paragraph of Section 3 of the Note shall be deleted and replaced with the following:

> "Borrower must pay principal and interest payments of $11,000.00 on the first day of each calendar month."

1

2.    The next to last paragraph of the Note shall be deleted and replaced with the following:

"All remaining principal and accrued interest is due and payable on November 30, 2029."

3.    Borrower shall at closing pay all accrued interest on the Loan.

4.    Borrower shall be responsible for payment of all Lender's attorneys, fees and expenses in connection with this Agreement.

5.    Except as herein modified, the Loan Agreement and other Loan Documents shall remain in full force and effect, and the Loan Agreement and other Loan Documents, as so modified, are hereby ratified and affirmed in all respects by the Borrower and Lender.

6.    Borrower confirms that it has no offsets or defenses with respect to its obligations pursuant to the Loan Agreement or any of the other Loan Documents, as herein modified.

7.    Borrower represents and warrants that there are no defaults or Events of Default under the Loan Agreement or any of the other Loan Documents.

8.    The Guarantor joins in the execution of this Agreement to acknowledge his consent to the terms hereof, and to acknowledge that the Guarantee Agreement dated December 5, 2012 (the "Guarantee") and any other Loan Documents executed by the Guarantor remains in full force and effect, and is hereby ratified and affirmed in all respects and extend to the Loan Agreement and other Loan Documents, as so modified and amended.  Guarantor confirms that he has no defenses or setoffs with respect to his obligations pursuant to the Guarantee or any other Loan Documents.  Upon request of Lender, the Guarantor will execute a replacement Guarantee.

9.    **TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (i) ARISING OUT OF OR IN ANY WAY PERTAINING OR RELATING TO THIS AGREEMENT, OR THE LOAN AGREEMENT, OR (ii) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THIS AGREEMENT OR THE LOAN AGREEMENT OR IN CONNECTION WITH THE TRANSACTIONS RELATED THERETO OR CONTEMPLATED THEREBY OR THE EXERCISE OF THE PARTIES' RIGHTS AND REMEDIES THEREUNDER, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE. BORROWERS AND GUARANTOR AGREE THAT LENDER MAY FILE A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED AGREEMENT OF THE PARTIES IRREVOCABLY TO WAIVE THEIR RIGHTS TO TRIAL BY JURY, AND THAT, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN THE PARTIES SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.**

*The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:*

*a)       When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.*

*b)       Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.*

*Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.*

(Signature Page Follows)

3

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers, agents or members as of the year and date first above written.

**BORROWERS:**

Jordan Enterprises, LLC
a Tennessee limited liability company

By: _____
Name:   Lucius D. Jordan III
Title:    Chief Manager

Holiday Erin, LLC
a Tennessee limited liability company

By: _____
Name:   Lucius D. Jordan III
Title:    Chief Manager

Holiday Midtown, LLC
a Tennessee limited liability company

By: _____
Name:   Lucius D. Jordan III
Title:    Chief Manager

Holiday Germantown, LLC
a Tennessee limited liability company

By: _____
Name:   Lucius D. Jordan III
Title:    Chief Manager

Hacks Holiday, LLC
a Tennessee limited liability company

By: _____
Name:   Lucius D. Jordan III
Title:    Chief Manager

Holiday Ham Holdings, LLC
a Tennessee limited liability company

By: _____
Name:   Lucius D. Jordan III
Title:

**GUARANTOR:**

_____
Lucius D. Jordan III

4

LENDER:

Pinnacle Bank

By: _____

Name: _____

Title: _____



**STATE OF TENNESSEE**
**Tre Hargett, Secretary of State**
Division of Business Services
William R. Snodgrass Tower
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

RICHARD EM NICHOL, JR.
STE 200
1000 RIDGEWAY LOOP RD
MEMPHIS, TN 38120-4036

January 4, 2016 9:39 AM

Financing Statement Doc #:   424335603
DLN #:  B0179-6077

## UCC Financing Statement Acknowledgment

This acknowledges the filing of the attached UCC1 document. Please review the data to ensure database information corresponds with information on the submitted UCC form. In the event a discrepancy is found, please note the error and return the entire package to our office. If we may be of any further service to you, please contact us at the number noted below.

Tre Hargett
Secretary of State

Enclosures:  Original Documents

**DEBTOR INFORMATION**

HOLIDAY HAM HOLDINGS, LLC

5885 RIDGEWAY CENTER PKWY
STE 110
MEMPHIS, TN 38120-4011

**SECURED PARTY INFORMATION**

PINNACLE BANK

6525 N QUAIL HOLLOW RD
STE 513
MEMPHIS, TN 38120-1313

**RECORDING TAX**

Maximum principal indebtedness for Tennessee recording tax purposes is:          $0.00

**FILING INFORMATION**

Financing Statement Doc #:    424335603
Filing Date:                  1/4/2016 9:38 AM
Lapse Date:                   1/4/2021 11:59 PM

| Document Receipt | | |
|---|---|---|
| Receipt # :  2367359 | Fees Paid: | $15.00 |
|  | Taxes Paid: | $0.00 |
| Payment-Credit Card Ref #: 3660501792 | | $15.00 |

Phone (615) 741-3276  *  Website:  http://tnbear.tn.gov/          Page 1 of 1



424335603

## FINANCING STATEMENT

A. NAME & PHONE OF CONTACT AT FILER (Optional)
(901) 525-6781

B. EMAIL OF CONTACT AT FILER (Optional)
rnichol@evanspetree.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

RICHARD EM NICHOL, JR.
STE 200
1000 RIDGEWAY LOOP RD
MEMPHIS, TN 38120-4036

This is a representation of a document created electronically at the Tennessee Secretary of State's web site.

Financing Statement Doc #: 424335603

Filing Date: 1/4/2016 9:38 AM

Tre Hargett, Secretary of State

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

### DEBTORS

1. DEBTOR'S NAME

| a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| HOLIDAY HAM HOLDINGS, LLC | | | |

OR

| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S) INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

c. MAILING ADDRESS
STE 110, 5885 RIDGEWAY CENTER PKWY

| d. CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|
| MEMPHIS | TN | 38120-4011 | USA |

### SECURED PARTIES

1. SECURED PARTY'S NAME (or NAME OF ASSIGNEE of ASSIGNOR SECURED PARTY)

| a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| PINNACLE BANK | | | |

OR

| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S) INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

c. MAILING ADDRESS
STE 513, 6525 N QUAIL HOLLOW RD

| d. CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|
| MEMPHIS | TN | 38120-1313 | USA |

COLLATERAL: This financing statement covers the following collateral:

## ALL BUSINESS ASSETS

**Maximum principal indebtedness for Tennessee recording tax purposes is:**  $0.00

Check only if applicable and check only one box: Collateral is ☐ held in a Trust
☐ being administered by a Decedent's Personal Representative

Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

OPTIONAL FILER REFERENCE DATA:

NOTE: All information on this form is public record.

B0179-6077 01/04/2016 9:38 AM Received by Tennessee Secretary of State Tre Hargett



**Tre Hargett**
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
SPRINGFIELD, IL 62703

July 8, 2020 11:25 AM

Financing Statement Doc #:   424335603
Amendment Doc #:   432866053
DLN #:  B0888-6009

## UCC Financing Statement Amendment Acknowledgment

This acknowledges the filing of the attached UCC3 document. Please review the data to ensure database information corresponds with information on the submitted UCC form. In the event a discrepancy is found, please note the error and return the entire package to our office. If we may be of any further service to you, please contact us at the number noted below.

Tre Hargett
Secretary of State

Enclosures:  Original Documents

### AMENDMENT INFORMATION

| | |
|---|---|
| Amendment Doc #: | 432866053 |
| Amendment Filing Date: | 7/8/2020 11:21 AM |
| Amendment Actions: | Continuation |
| Financing Statement Lapse Date: | 1/4/2026 11:59 PM |
| Optional Filer Ref Data: | Debtor:HOLIDAY HAM HOLDINGS, LLC [191478368] |

### Document Receipt

Receipt # :  5651141

Fees Paid:  $15.00
Taxes Paid:  $0.00

Payment-Account  -  #41221 API ACH Corporation Service Company, SACRAMENTO, CA    $15.00



432866053

## FINANCING STATEMENT AMENDMENT

This is a representation of a document created electronically at the Tennessee Secretary of State's web site.

| A. NAME & PHONE OF CONTACT AT FILER (Optional) |
| CSC (800)858-5294 |
| B. EMAIL OF CONTACT AT FILER (Optional) |
| FilingDept@cscinfo.com |
| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |

⌐ CORPORATION SERVICE COMPANY ⌐
 801 ADLAI STEVENSON DRIVE
 SPRINGFIELD, IL  62703

Amendment Doc #: 432866053

FILED: 7/8/2020 11:21 AM

Tre Hargett, Secretary of State

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

| INITIAL FINANCING STATEMENT FILE NUMBER | ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
| 424335603 | |

☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of Secured Party authorizing this Termination Statement

☐ ASSIGNMENT (full or partial)

☑ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

☐ PARTY INFORMATION CHANGE:
This Change affects ☐ Debtor  or  ☐ Secured Party of record     ☐ CHANGE name and/or address     ☐ ADD name     ☐ DELETE name

☐ COLLATERAL CHANGE:          ☐ ADD collateral     ☐ DELETE collateral     ☐ RESTATE covered collateral     ☐ ASSIGN collateral
Indicate collateral:

**The increase in the maximum principal indebtedness for Tennessee recording tax purposes is:**     $0.00

NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  (name of Assignor, if this is an Assignment) If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | ORGANIZATION'S NAME | | | |
| OR | PINNACLE BANK | | | |
| | INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S) INITIAL(S) | SUFFIX |
| | | | | |
| | OPTIONAL FILER REFERENCE DATA: | | | |
| | Debtor:HOLIDAY HAM HOLDINGS, LLC [191478368] | | | |

NOTE: All information on this form is public record.

UCC FINANCING STATEMENT AMENDMENT (TN Form UCC3) (Rev. 10/17)          Page 1 of 1          RDA 1154

**Pinnacle Bank**

David Hoppenworth
Falls of Neuse Road
Nashville, TN 37201
Phone:(864)213-1640

Jordan Enterprises LLC
7700 Poplar Avenue
Suite 200
Germanton, TN 38138

SBA Loan Number:        5003
Loan Number:            0271

Tuesday, July 11, 2023

Dear Jordan Enterprises LLC

The following is the loan payoff information as of
  Friday, July 7, 2023.

**Jordan Enterprises LLC**

| | |
|---|---|
| Payoff for Loan Number: | 0271 |
| Payoff Date: | 07/07/2023 |
| Last Payment: | 04/28/2023 |
| Interest Paid To: | 04/28/2023 |
| Accrued Interest / Day: | $193.56 |
| Current Interest Rate: | 11.0000 |
| Next Rate Change Date: | 08/01/2023 |
| | |
| Principal Balance: | $642,276.97 |
| Accrued Int (07/07/2023): | $13,399.84 |
| Late Fees Owing: | $5,382.40 |
| Misc Fees Owing: | $0.00 |
| Escrow Fees: | $0.00 |
| Total Expenses: | $0.00 |
| Pre-Payment: | $4,064.82 |
| Pay - Off Amount: | $665,124.03 |
| Attorney Fees: | $350.00 |
| TOTAL CLAIM: | $665,474.03 |

Sincerely,

Bill Kerns
Senior Vice President