**Dated: July 31, 2023**
**The following is ORDERED:**



_____
M. Ruthie Hagan
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUTPCY COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| IN RE: | |
| **HOLIDAY HAM HOLDINGS, LLC** | Case No. 23-23313-MRH |
| Debtor. | Chapter 11, Subchapter V |

**ORDER ON EXPEDITED MOTION TO APPROVE SALE OF ASSETS OF DEBTOR OUTSIDE ORDINARY COURSE OF BUSINESS PURSUANT TO 11 U.S.C. SECTION 363 AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS PURSUANT TO 11 U.S.C. SECTION 365**

Upon motion being filed by Holiday Ham Holdings, LLC, the Debtor-in-Possession ("Debtor") on July 13, 2023 (ECF No. 12) pursuant to 11 U.S.C. Sections 363 and 365 and Fed. Rule of Bankr. Proc. 4001 and 9014 (hereafter the "Sale Motion") requesting the Court approve the sale of certain assets of the Debtor and assumption and assignment of certain executory contracts according to the Letter of Intent ("LOI") dated July 12, 2023 by Lift SPV 231, LLC (hereafter "Lift") in the above named and numbered case. Pursuant to Expedited Motion to Shorten Time on Objection Bar Date and Notice of Hearing (ECF No. 17), after hearing, the Court granted the motion and entered an order (the "Expedited Hearing Order") setting the hearing on the Sale Motion for July 28, 2023 at 11:00 a.m. (ECF No. 28).

A "Limited Response" to the Sale Motion was filed by Craig M. Geno, the Subchapter V Trustee (ECF No. 51). An Objection to the Sale Motion was filed by the United States Trustee (ECF No. 52).

1

The Court noted that the Objection of the United States Trustee was not timely filed and should be stricken but allowed the attorney for the United States Trustee to participate in the Sale Hearing.

The Court conducted a hearing on the Sale Motion (the "Sale Hearing") on July 28, 2023, at which time all creditors and interested parties were offered an opportunity to be heard with respect to the Sale Motion. Appearances were made by Toni Campbell Parker, counsel to the Debtor, Jamaal M. Walker, Trial Attorney for the United States Trustee, and E. Franklin Childress, Jr., counsel to Lift. In addition, video appearances were made by Craig M. Geno, the Subchapter V Trustee, Matthew R. Murphy, counsel to Pinnacle Bank, and Adam C. Crider, counsel to FirstBank.

Counsel for Pinnacle Bank and FirstBank announced the support of their respective clients for approval of the Sale Motion. Testimony was given by Lucius D. Jordan, III on behalf of the Debtor, and a Proffer given on behalf of testimony given by Joshua Lipman, a member of Lift in support of the Sale Motion.

Based upon the record of the hearing before the Court and the arguments of counsel made, and the evidence proffered at the Sale Hearing, due notice of the Sale Motion having been given in accordance with the Expedited Hearing Order, it appears that the relief requested in the Sale Motion is in the best interests of the Debtor, its estate and creditors and all parties in interest in this Chapter 11 case. At the conclusion of the Sale Hearing, the Court issued a bench ruling based upon the record of the Sale Hearing and this Chapter 11 case. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P.7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014.

**IT IS HEREBY FOUND AND DETERMINED THAT:**

JURISDICTION AND VENUE

1. This Court has jurisdiction of the subject matter herein and the parties hereto pursuant to 28 U.S.C. §§157 and 1334; 11 U.S.C. §§105, 363, 365, 1106, 1108, 1183 and 1184 and related statutes and rules, as well as various orders of reference. This is a core proceeding.

BACKGROUND

2. On July 7, 2023, Holiday Ham Holdings, LLC ("Debtor") filed a petition under Chapter 11, Subchapter V of the United States Bankruptcy Code and such petition was granted on same date. Craig M. Geno was appointed as Chapter 11, Subchapter V Trustee on July 13, 2023 (ECF No. 9). No Committee has been appointed as of the filing of this Motion herein.

3. The Debtor has owned and/or operated various Holiday Ham locations and Pimentos restaurants throughout the Mid-South region ("Restaurant Operations). Connected to the Restaurant Operations, Debtor has been in the business of producing, marketing, and selling pimento cheese products to retail establishments (known as the "Grocery Division").

4. Debtor has additionally provided financial accounting, cost accounting, and general consulting to operations under an executory contract with Belle Meade Social, a Memphis, TN restaurant (the "Management Contract").

RELIEF GRANTED

5. Lift is approved as more particularly described in the attached LOI to purchase the assets of the Grocery Business and certain related assets, as well as assignment of the Management Contract (the "Acquired Assets") of Holiday Ham ("Seller") under the terms of a mutually acceptable asset purchase and sale agreement (the "APA").

6. Lift is authorized to purchase the Acquired Assets for $250,000 (the "Consideration") at closing plus the assumption of the Assumed Liabilities.

7. The APA is not contingent upon any financing by Lift for purchase of Assets from Debtor.

8. The Assets purchased are as follows:

    a. All rights and obligations of Debtor with manufacturers for production of pimento cheese products ("Pimento Products") identified by Lift to be assumed, are hereby assumed and assigned to Lift pursuant to Section 365 of the Bankruptcy Code (the "Production Agreements");

3

b.  The recipes and non-exclusive rights to use the recipes for pimento cheese, chicken salad, tuna salad, egg and olive salad, black bean corn salad, cheese dip, salsa and salad dressings in the Grocery Business to be marketed under the Pimentos trademark (collectively, the "Recipes");

c.  All rights and obligations of Debtor with Kroger or any existing purchaser arising under those executory contracts for the sale and purchase of the Pimento Products identified by Lift to be assumed are hereby assumed and assigned to Lift pursuant to Section 365 of the Bankruptcy Code (the "Sale Contracts");

d.  The Management Contract to be assumed is hereby assumed and assigned to Lift pursuant to Section 365 of the Bankruptcy Code (collectively with the Production Agreements and the Sale Contracts, the "Assigned Contracts");

e.  Inventory of Pimento Products existing as of the date of the closing of purchase (the "Inventory"); and

f.  Rights to intellectual property used at or in connection with the operation of the Grocery Business including the registered trademarks for "Pimentos" filed as Serial Number 87084773, Registration Number 5243163 and Serial Number 879752951 Registration Number 5296560.  Upon transfer of the registered trademarks for "Pimentos" Lift agrees to the granting of a perpetual license for the use of the tradename, Pimentos, in Restaurant Operations only to the potential acquirers of the Restaurant Operations.

9.  Debtor is of the belief that this is the highest and best price to be obtained from the Assets. The Court finds these assets constitute a portion of the assets of Debtor which currently are not necessary for an effective reorganization.  Further, the Acquired Assets being sold are a small portion of the overall property of the estate. No commissions or broker fees are being paid in relation to the sale of these assets.

10. The sale of the Acquired Assets to Lift by Debtor is hereby granted and such transfer and purchase approved for the Assets free and clear of all Liens, Claims, and Interests pursuant to Section 363(f) of the Bankruptcy Code and other terms as required pursuant to the APA. Lift would not have submitted the LOI and entered into the APA and would not consummate the transactions contemplated thereby if the sale of the Acquired Assets were not free and clear of all Liens, Claims, and Interests, or if the Lift would, or in the future could, be liable for any such Liens, Claims, and Interests, including, as applicable, certain liabilities related to the Debtor's business that will not be assumed by the Lift, as described in the LOI and APA.

11. The Court finds that the offer provides fair market value; and time is of the essence to sell the assets and provide working capital to the Debtor. Debtor has a need for "cash collateral" in operation of the Debtor.

12. Debtor disclosed that one individual who currently serves as a Director of Debtor and would be considered an "insider" is a non-controlling member of the LLC purchasing assets known as Lift.

13. The Sale Hearing was held on an expedited basis with notice given to the Debtor, Seller, all Secured Creditors, Twenty Largest Unsecured Creditors and all parties filing or requesting notice of all matters within this case by email or fax and the Court finds such Notice to be adequate in these circumstances.

14. The Court finds that the sale is in the best interest of the Debtor, its estate, and its creditors.

15. After notice and hearing the Court approves the sale under terms and conditions as requested herein and the order is a final order as to which there is no just reason for delay in its implementation, as to which a judgment should be entered immediately and that for purposes of Fed. R. Bankr. P. 7062 is an order authorizing sale of property of estate under 11 U.S.C. Section 363 and authorizing the assumption and assignment of the executory contracts under 11 U.S.C. 365.

16. The Debtor has demonstrated good, sufficient, and sound business purposes and justifications for approval of the motion, the LOI, and entering into the APA and any ancillary agreements thereto (the "Related Agreements"). The Debtor's entry into and performance under the APA and Related Agreements (i) are a result of due deliberation by the Debtor and constitute a sound and reasonable exercise of the Debtor's business judgment consistent with its fiduciary duties; (ii) provide value to and are beneficial to the Debtor's estate and are in the best interests of the Debtor and its creditors and stakeholders; and (iii) are reasonable and appropriate under the circumstances. Business justifications for the sale transaction (the "Sale Transaction") include, but are not limited to, the following: (a) the offer of Lift pursuant to the LOI constitutes the highest or best offer received for the Acquired Assets; (b) the LOI presents the best opportunity to maximize the value of the Acquired Assets and avoid decline and devaluation of the Acquired Assets; and (c) the value of the Debtor's estate will be maximized through the sale of the Acquired Assets pursuant to the APA.

17. The Consideration to be paid by Lift as provided in the APA (i) constitutes fair, adequate, and reasonable consideration for the Acquired Assets; (ii) is the highest or best offer for the Acquired Assets; (iii) will provide a greater recovery for the Debtor's estate and creditors than would be provided by any other practically available alternative; and (iv) constitutes reasonably equivalent value and fair consideration for the Acquired Assets (as those terms are defined in the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code).

18. By consummating the sale pursuant to the APA, Lift is not a mere continuation of the Debtor or the Debtor's estates and there is no continuity, no common identity, and no continuity of enterprise between Lift and the Debtor. Lift is not holding itself out as a continuation of Debtor. Lift is not a successor to Debtor or Debtor's estate by reason of any theory of law or equity, and the sale does not amount to a consolidation, merger, or *de facto* merger of Lift

and the Debtor. Neither Lift nor any of its affiliates (as defined by section 101 of the Bankruptcy Code, "Affiliates") and their respective successors, assigns, members, partners, principals, and shareholders (or equivalent) shall assume or in any way be responsible for any obligation or liability of the Debtor and/or Debtor's estate, except as expressly provided in the APA. The sale and transfer of the Acquired Assets to Lift, including the assumption by the Debtor and assignment, transfer and/or sale to Lift of the Assigned Contracts, will not subject Lift to any liability (including any successor liability) with respect to the operation of the Debtor's business prior to closing or by reason of such transfer, except that, upon closing, Lift shall become liable for the applicable Assumed Liabilities as limited by the APA.

19. The Debtor, Lift, and their respective counsel and advisors have negotiated, proposed and entered into the agreement to sell the Acquired Assets as described in the LOI and each of the transactions contemplated therein in good faith, without collusion and from arm's-length bargaining positions. Lift is a "good faith purchaser" and is acting in good faith within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby. Lift has proceeded in good faith in all respects. Specifically, (i) Lift recognized that the Debtor was free to deal with any other party interested in acquiring the Acquired Assets; (ii) Lift has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (iii) all payments to be made by Lift and all other material agreements or arrangements entered into by Lift and the Debtor in connection with the sale have been disclosed and are appropriate. The sale price in respect of the Acquired Assets was not controlled by any agreement among potential bidders, and neither the Debtor nor Lift have engaged in collusion or any conduct that would cause or permit the Sale Transaction to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code. The APA was not entered into for the purpose of hindering, delaying, or defrauding creditors

under the laws of the United States, any state, territory, possession, or the District of Columbia.

20. The Debtor, through its President and Managing Member, Lucius D. Jordan, III, is authorized to execute such bills of sale, assignments or other related documents which are reasonably necessary to consummate and close the sale of the Acquired Assets.

21. As of the Closing of the sale, the transfer of the Acquired Assets to Lift will be a legal, valid, and effective transfer of the Acquired Assets, and will vest Lift with all right, title, and interest of the Debtor in and to the Acquired Assets, free and clear of all Liens, Claims, and Interests. The consummation of the sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) and all of the applicable requirements of such sections have been complied with in respect of the sale. The Debtor (i) has full power and authority to execute the APA and the Related Agreements and all other documents contemplated thereby, and the sale has been duly and validly authorized by all necessary corporate action(s) of the Debtor; (ii) has all of the power and authority necessary to consummate the transactions contemplated by the APA and Related Agreements; and (iii) upon entry of this Sale Order, need no consent or approval from any other Person to consummate the sale.

22. The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtor to the extent necessary, without further order of the Court, to (i) allow Lift to deliver any notice provided for in the APA and any related documents and (ii) allow Lift to take any and all actions permitted under the APA and any Related Agreements in accordance with the terms and conditions thereof. Except to the extent specifically provided for in this Sale Order, nothing in this Sale Order shall modify, lift, or in any way affect the automatic stay pursuant to section 362 with respect to the Debtor, its estate or its property.

23. Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), 7062, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.  Time is of the essence in closing the Sale Transaction, and the Debtor and Lift may close the Sale Transaction as soon as practicable.

24. The APA, the Related Agreements, and any other documents or other instruments to be executed in connection therewith, may be modified, amended, or supplemented by the parties thereto, in a writing signed each party, and in accordance with the terms thereof, without further order of the Court; provided that any such modification, amendment, or supplement shall not materially change the terms of as set forth in the LOI any documents or other instruments executed in connection therewith.

25. The Court retains jurisdiction over any and all disputes, claims or causes of action between the parties under the agreement.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS**:

The Court grants approval of Motion for sale of Acquired Assets free and clear of all Liens, Claims, and Interests and assumption and assignment of the Assigned Contracts as stated above. The Response filed by the Subchapter V Trustee is overruled and the Objection of the United States Trustee is stricken.


**Approved for Entry**:


/s/ *Toni Campbell Parker*
**TONI CAMPBELL PARKER (TN # 6984)**
ATTORNEY FOR CHAPTER 11 Debtor
45 North Third Ave, Ste. 201
MEMPHIS, TENNESSEE  38103
(901) 483-1020
Tparker002@att.net

9

BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC

/s/ *E. Franklin Childress, Jr.*
E. Franklin Childress, Jr. (Bar No. 07040)
165 Madison Avenue, Suite 2000
Memphis, Tennessee  38103
Telephone:  (901) 577-2147
Email:  fchildress@bakerdonelson.com
***Attorneys for Lift SPV 231, LLC***

CRAIG M. GENO, SUBCHAPTER V TRUSTEE
By His Attorneys,
LAW OFFICES OF CRAIG M. GENO, PLLC
By: /s/ Craig M. Geno
        Craig M. Geno

CC:

Jamaal Walker, Attorney for US Trustee

Craig Geno, Subchapter V Trustee

Secured Creditors of Debtor

Twenty Largest Unsecured Creditors

All Creditors and Parties on Mailing Matrix