IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| HOLIDAY HAM HOLDINGS LLC, | ) | Case No. 23-23313 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| | ) | |

**ERINWAY PARTNERS, L.P.'S OBJECTION TO DEBTOR'S
EXPEDITED MOTION TO SELL SUBSTANTIALLY ALL OF THE ASSETS OF
HOLIDAY HAM HOLDINGS, LLC, FREE AND CLEAR OF LIENS, CLAIMS AND
INTERESTS, WITH LIENS ATTACHING TO PROCEEDS OF SALE OUTSIDE
ORDINARY COURSE OF BUSINESS PURSUANT TO 11 U.S.C. SECTION 363 AND
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS PURSUANT TO
11 U.S.C. SECTION 365**

COMES NOW ErinWay Partners, L.P. ("Landlord"), as a creditor and party-in-interest, by and through the undersigned counsel, and files this Objection to the Expedited Motion to Sell Substantially All of the Assets of Holiday Ham Holdings, LLC, Free and Clear of Liens, Claims and Interests, With Liens Attaching to Proceeds of Sale Outside Ordinary Couse of Business Pursuant to 11 U.S.C. Section 363 and Assumption and Assignment of Executory Contracts Pursuant to 11 U.S.C. Section 365 ("Motion"; Landlord's objection hereafter referred to as the "Objection") filed by Debtor Holiday Ham Holdings, LLC ("Debtor"). (Dkt. No. 101). Debtor's Motion should be denied as: (1) Debtor failed to demonstrate adequate assurance of future performance of Debtor's assignee; (2) the Lease Agreement, as defined below, cannot be extended beyond the current Term; and (3) the Motion misapplies numerous legal concepts that together demand denial of the Motion. In further support of this Objection, Landlord states as follows:

## BACKGROUND FACTS AND PROCEDURAL HISTORY

1. On July 7, 2023 ("Petition Date"), Debtor, the alleged parent and holding company of Holiday Erin LLC ("Erin"), filed a voluntary petition for relief under Chapter 11, Subchapter V of the United States Bankruptcy Code.

2. Debtor filed its Bankruptcy Schedules and Statement of Financial Affairs on July 23, 2023 (Dkt. No. 41), which were subsequently amended the following day (collectively, with the amendments, the "Schedules"). (Dkt. No. 43).

3. On July 28, 2023 ("Erin Petition Date"), Erin filed its own voluntary petition for relief under Chapter 11, Subchapter V of the United States Bankruptcy Code, as Case No. 23-23685 ("Erin Bankruptcy Case"). (Erin Bankruptcy Case Dkt. No. 1).

4. Both Debtor and Erin are currently operating as a debtors-in-possession pursuant to 11 U.S.C. § 1107(a).

5. Prior to the Petition Date, Holiday Ham and Turkey, Inc. and White Station Partners, L.P. entered into that certain Standard Commercial Shopping Center Lease (as amended and/or modified from time to time, the "Lease Agreement") for lease and use of the premises located at 585 Erin Drive, Memphis, Tennessee 38119 ("Premises"). The Lease Agreement was subsequently assigned to Erin and Landlord, respectively, such that Erin and Landlord are the current parties to the Lease Agreement. A true and collect copy of the Lease Agreement, together with amendments thereto, is attached hereto as **Exhibit 1**.

6. In its Schedules, Debtor places a $600,000.00 going concern value on Erin, which includes the Lease Agreement and all equipment located at the Premises. *Id.*

7. Debtor filed the Motion on September 25, 2023 seeking to sell "all the assets" of Debtor via auction on October 25, 2023 at an unidentified time. Motion, ¶ ¶ 4, 13.

8.  According to the Motion to Sell, the assets subject to sale at the requested auction include "all remaining assets of the Debtor and the executory contracts which will be proposed to be assumed and assigned subject to the terms of each executory contract which may or may not require consent of the holder of such contract."  Motion, ¶ 7.  Of course, the executory contracts would include the Lease Agreement.

9.  On or about October 10, 2023, Landlord filed its Limited Objection to the Motion, asserting several preliminary objections, for purposes of preserving Landlord's ability to oppose the Motion ("<u>Limited Objection</u>").  (Dkt. No. 108).

10.  This Objection is intended to supplement—and not to replace—the Limited Objection, and therefore, Landlord further asserts such arguments posited therein, through incorporation by reference, as if fully stated herein.

11.  At no time during the auction process did Debtor provide any information as to the potential bidders or purchasers of the Debtor's assets, nor did Debtor provide any information as to whom might be interested in assuming and assigning the Lease Agreement.  Indeed, less than one hour before this Objection was due for filing did Landlord learn the identity of the potential purchaser or assignee.

12.  Regardless, the Motion must be denied as: (1) Debtor failed to satisfy the heightened adequate assurance standard associated with shopping center leases in the bankruptcy context; (2) the plain language of the Lease Agreement demonstrates that the Lease Agreement may not be extended upon the conclusion of the current Term, which is May 31, 2024; and (3) the Motion contains fatal flaws that require the Motion to be denied.

## <u>LAW AND ARGUMENT</u>

**I.    DEBTOR HAS FAILED TO DEMONSTRATE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE OF THE LEASE AGREEMENT.**

3

The Bankruptcy Code imposes a heightened standard when courts weigh adequate assurance of future performance in the context of shopping center leases. *See* 11 U.S.C. § 365(b)(3). To satisfy this heightened standard, the burden falls on the *debtor* to establish adequate assurance. *See In re Memphis-Friday's Assocs.*, 88 B.R. 830 (Bankr. W.D. Tenn. 1988). The overarching purpose of 11 U.S.C. § 365(b)(3)(A) is to require the debtor to provide adequate assurance of payment of future rent and performance under an executory contract. *See* 11 U.S.C. § 365(b)(3). This adequate assurance standard is satisfied by the debtor where the landlord receives the benefit of its bargain. *See id.* Although the Bankruptcy Code itself does not explicitly address what circumstances constitute proof of adequate assurance in the shopping center lease context, courts in the Sixth Circuit have found:

> Adequate assurance of future performance is not defined in the Code. Thus, several courts have looked to the legislative history for guidance and have concluded that "the term was intended to be given a practical, pragmatic construction in light of the facts of each case." *In re Natco Industries, Inc.*, 54 B.R. 436, 440–41 (Bankr.S.D.N.Y.1985). "As designed by Congress, it does not mean absolute insurance that the debtor will thrive and make a profit." *Id.*, (citing *In re Alipat, Inc.*, 36 B.R. 274, 278 (Bankr.E.D.Mo.1984)). Rather, the emphasis is on protection of the lessor, and the intention "is to afford landlords with a measure of protection from having to be saddled with a debtor that may continue to default and return to bankruptcy." *In re Natco Industries*, Inc., 54 B.R. at 441; *In re Rachels Industries, Inc.* 109 B.R. at 803.

*In re Barnhill's Buffet, Inc.*, No. 07-08948, 2008 WL 4527829, at 3 (Bankr. M.D. Tenn. 2008); *see also In re Rachels Indus., Inc.,* 109 B.R. 797, 803 (Bankr. W.D. Tenn. 1990). Specifically, a debtor must establish that the financial condition and operating performance of a proposed assignee are similar to debtor's <u>at the time of the original lease's signing</u>. 11 U.S.C. § 365(b)(3)(A); *In re Serv. Merch. Co., Inc.*, 297 B.R. 675, 681–82 (Bankr. M.D. Tenn. 2002), aff'd *sub nom. Ramco-Gershenson Properties, L.P. v. Serv. Merch. Co.*, 293 B.R. 169 (M.D. Tenn. 2003); *In re Barnhill's Buffet, Inc.*, 2008 WL 4527829, at *3.

4

As to shopping center leases, a heightened standard applies. *In re Serv. Merch. Co., Inc.*, 297 B.R. at 681–82 (citing 11 U.S.C. § 365(b)(3)). Courts in this jurisdiction have found that the standard requires adequate assurance: (1) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease; (2) that any percentage rent due under the lease will not decline substantially; (3) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; **_and_** (4) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center. *See In re Memphis-Friday's Assocs.*, 88 B.R. 830 at 833; *see also* 11 U.S.C. § 365(b)(3).

Put simply, the Motion fails to satisfy the above-referenced standard in any material way. The Motion alleges that, if granted, the Debtor's purchaser will: assume Restaurant Operation; utilize Debtor's Recipes; and utilize Debtor's Inventory. Motion, ¶ 8(a)–(c).[1] Debtor baldly represents that an auction will procure the "highest and best price to be obtained from the Assets" and that, according to Debtor's opinion, "an auction will represent a fair market value" of the Assets, which includes, but is not limited to, the Lease Agreement. *Id.*, ¶¶ 10–11.

However, the Motion's conclusory representations are insufficient for this Court to conduct a proper analysis or evaluation of adequate assurance of future performance. Debtor, less than one hour before this Objection was due for filing, identified Jose L. Flores as the party who intends to

---

[1] For purposes of this Objection, Landlord herein refers to capitalized terms in accordance with the same definitions referred to by Debtor, as stated in the Motion.

5

acquire the Lease Agreement. This last-minute notice has wholly precluded any independent investigation by Landlord as to whether Debtor will be able to establish adequate assurance of future performance and has prevented prior research the credit-worthiness of the proposed assignee. *See generally* Motion (noting the absence of this information needed for this Court to conduct the appropriate analysis as to whether a sale should be permitted). Debtor failed to identify or represent <u>any</u> financial condition and operating performance of the proposed assignee, let alone their guarantor(s), if they even exist. *See id.* Debtor failed to identify or represent that Debtor's assignee was of similarly-situated financial condition to that of Debtor at the time Landlord and Debtor entered into the Lease Agreement. *See id.* Debtor failed to identify or represent that Debtor's assignee would not disrupt tenant mix or balance in the shopping center. *See id.* Indeed, the Landlord has several other negative covenants with other tenants in the shopping center that must be considered when evaluating this assignment. The only item Debtor did identify is that Debtor's purchaser may assume the Lease Agreement. *See* Motion, ¶ 25. But, once again, Debtor did not identify or represent that Debtor's assignee's use would not violate exclusivity provisions governing the master agreement of the shopping center.

As noted in the Limited Objection, *see* Dkt. No. 108, an auction may well be the appropriate avenue for the sale of Debtor's assets. That analysis, however, puts the proverbial cart before the horse. Here, Debtor seeks to expedite the sale and an assumption and assignment of the Lease Agreement without providing <u>any</u> actual assurances to Landlord—much less assurances that satisfy the standard in 11 U.S.C. § 365(b)(3). In actuality, granting this Motion and permitting the sale, without requiring significantly greater detail as to adequate assurances of future performance, would irreparably and irreversibly harm Landlord. In that context, Landlord would find itself in a fixed, contractual relationship with the highest bidder, leaving other considerations and further

6

prejudices ignored. In the face of Debtor's failure to satisfy the heightened standards of adequate assurance, this Court must deny the Motion on this basis alone.

## II. ANY PURCHASER WILL BE UNABLE TO EXTEND THE TERM OF THE LEASE AGREEMENT.

The Lease Agreement, by its plain terms, in conjunction with Erin's pre-petition default, precludes the Debtor or any proposed assignee from extending the Term of the Lease Agreement. Article XXVI § 23.9 provides that "[t]he laws of the State in which the [] Premises is located shall govern the interpretation, validity, performance and enforcement of this lease." *See* Exhibit 1, at Article XXVI, § 23.9. As stated above, the Premises is located in Tennessee. Accordingly, Tennessee law applies. *See id.*

"When interpreting a contract under Tennessee law, the court seeks to ascertain the intention of the parties and give effect to those intentions consistent with legal principles." *In re Chattanooga Mercantile, LLC*, No. 1:20-BK-12020-NWW, 2021 WL 666336, at *3 (Bankr. E.D. Tenn. Feb. 19, 2021) (citing *see, e.g., Christenberry v. Tipton*, 160 S.W.3d 487, 494 (Tenn. 2005)). To determine the parties' intent, the court looks at the material contained within the four corners of the document. *Id.* (citing *see, e.g., Jaffe v. Bolton*, 817 S.W.2d 19, 25 (Tenn. Ct. App. 1991)). "If a contract's language is clear and unambiguous, the court must construe the contract as written, favoring neither party." *See Cummings v. Vaughn*, 911 S.W.2d 739, 742 (Tenn. Ct. App. 1995); *Heyer-Jordan & Assocs., Inc. v. Jordan*, 801 S.W.2d 814, 821 (Tenn. Ct. App. 1990). "[T]he literal meaning controls the outcome of the dispute." *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006) (citing *see Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002)).

Contract interpretation in the bankruptcy context is no different. "Courts are precluded from creating a new contract for the parties." *In re Pyramid Operating Auth., Inc.*, 144 B.R. 795,

812 (Bankr. W.D. Tenn. 1992) (citing *Galyon v. First Tennessee Bank Nat. Ass'n.,* 803 S.W.2d 218, 219 (Tenn.1991)). Indeed, bankruptcy courts "can only enforce the contract for which the parties themselves have made." *In re Holcomb Health Care Servs., LLC*, 329 B.R. 622, 651 (Bankr. M.D. Tenn. 2004) (citing *McKee v. Continental Ins. Co.*, 234 S.W.2d 830 (Tenn. 1950)). Here, the Lease Agreement provides that (1) where a default exists, Erin's extension option automatically terminates and (2) the extension option is unavailable to any assignee of the Lease Agreement.

### A.      Debtor Was In Default Of The Lease Agreement Prior To The Petition-Date.

The plain language of the Lease Agreement demonstrates that Erin was in default under the Lease Agreement before its Petition Date. Article XVIII of the Lease Agreement, provides that, an Event of Default occurs where "Tenant [] fail[s] to pay any installment of rental or any other expense demanded by Landlord … [and] such failure [] continue[s] for a period of ten [(10)] days after written notice." *See* Exhibit 1. Pursuant to the Lease Agreement, Landlord has submitted at least two default notices. The first notice was submitted to Erin on March 28, 2023, and on July 17, 2023, Landlord sent a second default letter to Erin reiterating the ongoing monetary defaults under the Lease Agreement (collectively, the "Default Letters"). True and correct copies of the Default Letters are attached hereto as **Collective Exhibit 2**. In the July 2023 default letter, Landlord advised, in part, that Erin "is required to pay Monthly Payment by the first of each month" and "[a]s of [July 17, 2023], [Erin] failed to make monthly payments due and owing under the terms of the Lease [Agreement] for the months of June and July 2023. *See* Exhibit 2.

Further, Article XXIII, § 23.1 of the Lease Agreement, states that "[a]ny notice or document required or permitted to be delivered hereunder shall be deemed delivered whether actually received[,] or not[,] when deposited" or sent. *See* Exhibit 1, at Article XXIII, § 23.1

(emphasis added). Erin had ten (10) days from the date of the Default Letters with which to cure the overdue payments noted in the Default Letters, or Erin would be in default under the Lease Agreement. *See* Exhibit 1, at Article XVIII and Article XXIII, § 23.1. Erin failed to cure the defaults identified in the March 2023 default letter within 10 days. Moreover, 10 days after July 17, 2023 was Thursday, July 27, 2023. As previously noted, Erin filed its voluntary petition on Friday, July 28, 2023, without remitting cure payments to Landlord. Erin, therefore, remained in default of the Lease Agreement on its Petition Date.

As noted, the Lease Agreement was modified in numerous forms prior to the Petition Date. On or about April 26, 2019, Erin and Landlord entered into that certain Fifth Lease Amendment (the "Amendment"). *See* Exhibit 1, pp 25-29. The Amendment states, in part, that "[t]he Lease Term will be extended [sixty] (60) months from June 1, 2019 through May 31, 2024. Amendment, Exhibit 1, at ¶ 2. Erin had the option to renew the Lease Agreement for two additional renewal terms of 60 months each, but all such rights were terminated because Erin defaulted under the Lease Agreement. *See* Amendment, Exhibit 1, at ¶ 6(iii). In other words, Erin's default automatically extinguished any right to renew or extend the Lease Agreement—for either the Erin or any potential assignee. Accordingly, Erin's default means that the Lease Agreement is set to expire, by its terms, on May 31, 2024, and Erin's assignment of the Lease Agreement cannot revive this extension option. *In re Lucre, Inc.*, 434 B.R. 807, 814–15 (W.D. Mich. 2010) (noting that the bankruptcy estate cannot acquire interests, greater than what the debtor had previously held, unless the Bankruptcy Code itself creates a greater right).

**B.    The Term Extension Clause In The Lease Agreement Cannot Be Exercised By An Assignee.**

In addition to the fact that Erin's pre-petition default terminated the renewal option, the Amendment states that Debtor "(but not any subtenant or assignee of [Debtor]) will have the option

9

to renew the Lease [Agreement.]" *Id.*, ¶ 6. Debtor's sale will necessarily require assumption and assignment of the Lease Agreement to another person or entity. The plain terms of the Lease Agreement provide that the extension or renewal options <u>are only available to Erin</u> if certain conditions exist (i.e., where there has never been a default). *See id.* It necessarily follows that no assignee of the Lease Agreement will retain the Renewal Option stated in the Amendment, and such person or entity will be forced to surrender the Premises on or before May 31, 2024. *See In re Pyramid Operating Auth., Inc.*, 144 B.R. at 812. As previously discussed, the Debtor may only assign the rights in the Lease Agreement that it has, and an assignment pursuant to 11 U.S.C. § 365 cannot expand or revive rights that the Debtor does not have. *In re Lucre, Inc.*, 434 B.R. at 814–15.

**III.    SEVERAL ISSUES WITH THE MOTION ARE DISPOSITIVE.**

The Motion contains various inconsistencies and misapplications of law that require denial of the Motion.

    **A.    Debtor's Motion Fails To Make The Preliminary Showings Necessary To Be Afforded Deference Provided By The Business Judgment Rule.**

The Motion goes to great lengths to argue that Debtor is entitled to the presumptions provided by application of the business judgment rule. Motion, at ¶ ¶ 18–21. As noted in the Motion, "Courts typically consider the following factors in determining whether a proposed sale" satisfies the ramparts of 11 U.S.C. § 363. *Id.*, at ¶¶ 18–19. Debtor's Motion, however, conflates the standards that distinguish a sale under 11 U.S.C. § 363 from an assumption and assignment of lease under 11 U.S.C. § 365 and fails to account for the adequate assurances necessary to proceed. *See generally* Motion (noting that Debtor's Motion presumes a sale is occurring, thus entitling Debtor to the business judgment rule presumption, without first assuring adequate assurances of future performance are satisfied). As noted in the Limited Objection, an auction sale may be the

10

avenue needed to liquidate Debtor, but the Lease Agreement may not be assumed or assigned without satisfying the elements required in 11 U.S.C. § 365—including requiring proof of adequate assurance of future performance.  *See In re Memphis-Friday's Assocs.*, 88 B.R. at 833.  Until then, however, the Court should ignore the business judgment rule in its entirety where the Debtor has failed to satisfy its burden of establishing adequate assurance of future performance.

### B.     The Purchaser Of Debtor Could Violate The Lease Agreement.

Article VI of the Lease Agreement states that "[t]he [] Premises may be used only for the purpose or purposes specified in Article I, § 1.1(o) … and for no other purpose or purposes without the prior written consent of Landlord."  Article I, § 1(o) of the Lease Agreement states that the Premises may be used as "[r]etail sale of seasonal and/or special Hams and Turkeys and operation of a delicatessen."  Further, Article 1, § 1.1(e) defines the trade name permitted to operate at the Premises as "Holiday Ham and Turkey, Inc."  Subsequent amendments to the Lease Agreement demonstrate the trade name and specificity associated with a delicatessen effect the specific use designated at Landlord's discretion, to the Premises, in relation to the shopping center as a whole.  Absent knowledge of the proposed assignee's intended use of Premises, including, but not limited to, the type of business it plans to pursue, no assignment can occur because Landlord cannot be satisfied that the Lease Agreement will not be immediately violated.  Indeed, the only information provided to Landlord (less than an hour before this Objection was due) is that the proposed assignee operates 30 "Margarita restaurants."  *See* Dkt. No. 131, ¶ 2.  This is entirely inconsistent with the Lease Agreement and the permitted uses thereunder.

### C.     Landlord's Objection To The Assignment Is Reasonable.

Landlord acknowledges that the Lease Agreement, at Article XVI, states that consent to assignment or transfer of the Premises to a subsequent party "shall not be unreasonably withheld."

11

*See* Exhibit 1. Typically, courts look to state law to determine whether a landlord's consent is being "reasonably withheld." *See In re Service Merchandise Co., Inc.*, 297 B.R. 675, 691 (Bankr. M.D. Tenn. 2002) (noting that landlord's decision to withhold consent to a sublease "should be judged under a test applying a reasonable commercial standard."). In employing this analysis, "[c]ourts have generally construed such factors as: (1) the subtenant's financial responsibility, (2) the type of business to be conducted on the premises, and (3) whether the business competes with that of the lessor or another lessee." *Id.* (citations omitted). Tennessee law is similar in that "the standard for determining reasonableness of consenting or withholding consent under a lease is to make a comparison of the financial stability of the present tenant and/or guarantors as contrasted to the proposed assignee." *First American Bank of Nashville, N.A. v. Woods*, 781 S.W.2d 588, 591 (Tenn. Ct. App. 1989); *see also Dick Broadcasting Co., Inc. of Tennessee v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 672 (Tenn. 2013) (noting that, where a contract is silent on the issue, a landlord should act "in good faith and in a commercially reasonable manner" when evaluating an assignment).

Here, it is entirely reasonable to object to an assignment that provides <u>no</u> assurances, much less adequate ones, that assignee (1) will be able to perform under the terms of the Lease Agreement; (2) will continue to operate the Premises in the spirit intended by the Lease Agreement; (3) will not violate any other covenants with any other tenants located in spaces surrounding the Premises; and (4) will not upset or disturb the current tenant mix and balance in the spaces surrounding the premises. *See* 11 U.S.C. § 365(b)(3). Indeed, Landlord has had no opportunity to investigate the proposed assignee of the Lease Agreement, and Debtor has not provided financial information that would enable Landlord to timely do so. Indeed, this Court's granting of the Motion would be premature, as Debtor has failed to provide representations as to

the assignee's financial status and ability to perform under the Lease Agreement. Indeed, only Landlord will be prejudiced, while Debtor obtains freedom from the Lease Agreement, without requirement to comply with the statutes that govern Debtor's conduct in this matter. *See In re Three A's Holdings, L.L.C.*, 364 B.R. 550 (Bankr. D. Del. 2007) (debtor could not assume and assign shopping center lease for business that was not a permitted use); *see also In re Heilig-Meyers Co.*, 294 B.R. 660 (Bankr. E.D. Va. 2001) (proposed assignment of a shopping center lease could not be approved for a business in direct competition with another tenant holding exclusive right to operate); *see also In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299 (Bankr. S.D.N.Y. 1983) (holding that courts do not have the authority to modify the permitted items sold under a lease and would not do so where tenant mix of a shopping center would be disrupted).

## CONCLUSION

For the foregoing reasons, Landlord respectfully submits that Debtor has not satisfied its burden for this Court to approve an assumption and assignment of the Lease Agreement pursuant to 11 U.S.C. § 365. In particular, Debtor has wholly failed to provide adequate assurances of future performance, and even so, Debtor's proposed assignment cannot modify or extend the Term under the Lease Agreement where Erin was in pre-petition default and where the renewal option is no longer available to Erin due to said default, let alone to any proposed assignee. As a result, Landlord requests that this Court enter an order denying the Motion. Landlord further requests that this Court grant Landlord such other and further relief that the Court deems appropriate under the circumstances.

Respectfully Submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.

/s/ *Locke Houston Waldrop*

13

Locke Houston Waldrop (TNB # 033360)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 577-2385
Email: lwaldrop@bakerdonelson.com

***Attorney for ErinWay Partners, L.P.***

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of October, 2023, a copy of the foregoing was served on the parties listed below by first-class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

| | |
|---|---|
| Holiday Erin LLC<br>9245 Poplar Ave., Ste. 5-146<br>Germantown, TN 38139-7903 | Toni Campbell Parker<br>Law Office of Toni Campbell Parker<br>45 N. Third, Ste. 201<br>Memphis, TN 38103 |
| Craig M. Geno<br>Law Offices of Craig M. Geno, PLLC<br>587 Highland Colony Parkway<br>Ridgeland, MS 39157 | Jamaal M. Walker<br>Office of the United States Trustee<br>200 Jefferson Avenue, Suite 400<br>Memphis, TN 38103 |
| U.S. Trustee<br>Office of the U.S. Trustee<br>One Memphis Place<br>200 Jefferson Avenue, Suite 400<br>Memphis, TN 38103 | |

/s/ *Locke Houston Waldrop*
Locke Houston Waldrop